No. 41,190

LEONARD STERTZ and MORENE STERTZ, *Appellees*, v. L. J. BRISCOE and ALICE HOBBS, *Appellants*.

(334 P. 2d 357)

164

Opinion filed January 24, 1959.

*Horace A. Santry,* of Salina, argued the cause, and *Joseph B. Crowther,* of Salina, was with him on the briefs for the appellants.

*Clarence N. Holeman,* of Wichita, argued the cause, and *Robert S. Lomax* and *Fred J. Gasser,* both of Wichita, were with him on the briefs for the appellees.

The opinion of the court was delivered by

PARKER, C. J.: This was an action, brought by the parents of a deceased child under the wrongful death statute, against the owner of certain rental property and his agent. After a trial by jury the court approved the verdict and rendered judgment for plaintiffs. The defendants appeal.

At all times here pertinent the defendant, L. J. Briscoe, owned a greenhouse in Lincoln, Kansas, and a four room residence on adjoining property. Defendant Alice Hobbs was manager of the greenhouse and agent for Briscoe in the rental of the residence property. On August 29, 1955, Miss Hobbs rented the house to plaintiffs, Leonard and Morene Stertz, for use as a home by the Stertz family. At that time Miss Hobbs informed Mrs. Stertz that the house had been sprayed with an insecticide and would be sprayed again before the family moved in. Mrs. Stertz testified that she was told a "gas bomb" was used, while Miss Hobbs claimed she informed Mrs. Stertz the house was sprayed with a "parathion bomb." Mrs. Stertz was told the house would be aired after the second spraying and would be safe to enter the evening of the next day.

On instructions from Miss Hobbs, Eldon Esslinger, an employee of the defendants, sprayed the house, including the bathroom, with a parathion bomb on Monday, August 29. This was the second and final spraying. The next day he went back to air out the house and opened all the doors and windows, except the window in the bathroom which was stuck. The Stertzes, with their children, entered

the house on Tuesday to do some work and returned each day of the week until Friday, September 2, when the family, consisting of the father, mother, two girls and one boy, moved into the house.

After the usual morning activities on Saturday, September 3, two of the plaintiffs' children, Wanda, age nine, and Donna Rae, age seven, asked their mother if they could "swim" in the bathtub. Prior to this time none of the family had used the tub. At about 1 p. m. the older girl took her bath. Sometime between 1:30 to 2 p. m. Donna Rae got into the bathtub to take her "swim," in the same water. Several hours later both girls became nauseous and ill, Wanda being the first to exhibit symptoms of illness. The boy, who was much younger, was not bathed in the bathtub and did not become ill. Donna was taken to the hospital in Lincoln and was then removed to a Salina hospital, where she died shortly after 11 p. m. Wanda died in the Lincoln hospital on the same evening.

In their petition plaintiffs alleged that Donna's death was caused by absorption of a quantity of a chemical known commercially as Lethalaire G-54, which contained 10 percent parathion; that this substance is designed for use as an insecticide for greenhouse ornamentals only; and that it is used as a spray which leaves a residue which is invisible, odorless, highly dangerous and poisonous to human beings. They also alleged that defendants were negligent in placing the highly dangerous substance in their rented house without notice to them, in failing to properly ventilate such house after placing the chemical therein, and that these acts of negligence were the proximate cause of Donna's death.

In their answer defendants denied generally the allegations of the petition and specifically denied any causal relationship between the fumigation of the house and the death of Donna. They affirmatively alleged that the fumigation of the property was done at the express request, with the full knowledge of the plaintiffs, and that such fumigation was a patent defect in the real estate.

With issues joined as just related the case proceeded to trial. The evidence, so far as here pertinent, may be summarized as follows: Lethalaire G-54 had been used for some nine or ten years as an insecticide in greenhouses owned by Briscoe. The bottle of Lethalaire G-54, which had been used in the house, was admitted in evidence. The label contained the warning "For Use on Greenhouse Ornamentals Only"; and had the word "Poison" printed in large letters in three places. The label also contained the warning to keep all skin surfaces covered and to use a gas mask when spraying

the product. Other warning precautions and antidotes covered the entire label. A pamphlet furnished with the bomb was also introduced. It contained instructions for measuring the cubic feet of the greenhouse and calculating the dosage and treating time, as well as other instructions for use and extensive safety precautions, including instructions for ventilation.

Eldon Esslinger testified that he sprayed the surface of the Briscoe house with enough of the parathion spray to leave a film on everything. He admitted that he did not follow the instructions on the bottle and that he did not measure the house before spraying or weigh the bomb before or after such spraying.

Eldon Means, a consulting chemist and chemical engineer, testified that Lethalaire G-54 contains 10 per cent parathion and 90 per cent inert ingredients and that, after application, the volatile portion of the material evaporates leaving parathion on the surface. He stated that parathion, when applied to ornamental plants in a greenhouse, goes down through the oil glands in the leaf and disappears from the surface of the plants. He testified further that a film of parathion would remain on a bathtub, like the one in the Briscoe house, for a period of at least three weeks and that there would be no odor.

Dr. Harold R. Smith, physician practicing in Lincoln, who attended Donna during her fatal illness, testified that the child died of neurotoxic poisoning and that parathion is a neurotoxic poison which inhibits the production of cholesterol in the body and causes an accumulation of betacholine at the nerve endings.

Dr. Richard L. Dreher, of Salina, who attended Donna upon her removal to the hospital in that city, testified that the child's symptoms at the time of the admission were those of neurotoxic poisoning from an unknown cause. He testified further that parathion is a neurotic poison which can get into a person's body by inhalation, by swallowing or by absorption through the skin.

It may be stated in a general way there was ample evidence to establish that Donna was an active, healthy and vigorous child, who was well-behaved, dutiful and close to her parents.

During the course of the trial defendants moved for judgment on the opening statement, upon the ground that in such statement plaintiffs at no time made any allegation of any kind indicating that their acts were the proximate cause of Donna's death. Ruling was reserved on such motion. Subsequently they demurred to

plaintiffs' evidence. Thereupon both the demurrer and motion for judgment on the opening statement were overruled. Thereafter defendants moved for a directed verdict on the ground the evidence adduced did not tend to establish a cause of action in favor of plaintiffs. This motion was overruled and the cause submitted to the jury, which found for the plaintiffs and assessed damages in the amount of $4,000. Later defendants' motion for judgment notwithstanding the verdict and for a new trial were overruled. This appeal followed.

Although they present twelve specifications of error appellants recognize some of them are overlapping and rely on but five points in their brief and on oral argument.

The first, and we may add the primary, contention advanced is that appellees have made no showing of proximate cause. In this connection, it should be noted, appellants admit that the record shows fumigation of the Briscoe house on August 29 and the death of Donna on Saturday, September 3. Indeed, on oral argument they concede the only conflict in all the evidence is whether, at the time of the renting of the residence, Miss Hobbs advised Mrs. Stertz she would fumigate the house with a bomb, as claimed by Mrs. Stertz, or with a parathion bomb, as claimed by Miss Hobbs. Since the evidence on that subject was conflicting we must, of course, proceed on the premise the jury, by its general verdict, resolved such conflict in favor of the appellees. Nevertheless appellants maintain that Donna's death has not been linked to the act of fumigation.

We find no merit in the foregoing contention. In *Cruzan v. Grace,* 165 Kan. 638, 198 P. 2d 154, this court defined proximate cause as follows:

"The proximate cause of an injury is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred." (Syl. ¶ 1.)

The evidence shows that the Briscoe house was sprayed with Lethalaire G-54, which contains parathion, a highly dangerous neurotoxic poison designed for use as an insecticide for greenhouse ornamentals only; that the manufacturer's instructions were not followed in the spraying and the surfaces of the house, including the bathroom and bathtub, were sprayed with enough of the chemicals to leave an invisible and odorless spray on everything; that the bathroom was not aired out after the spraying; and that the para-

thion film would remain on the bathtub for a period of at least three weeks. Although the physicians did not know the specific chemical agent which caused the death their testimony established conclusively that Donna died from neurotoxic poisoning and that such poison may be absorbed through the surfaces of the skin. Under these facts, and others heretofore noted, we are convinced appellees have established that the spraying of the bathtub in the Briscoe house with parathion was the direct and proximate cause of the death of Donna Rae Stertz. Appellants' suggestion of the presence of an efficient intervening cause between the spraying of the tub and her death is without foundation. Certainly they were bound to anticipate that someone would take a bath in the tub. This ordinary and usual event was not an efficient intervening cause.

Next it is urged that appellees are barred from recovery by reason of their contributory negligence in bringing their family to the Briscoe house and failing to take proper precaution when they had knowledge that it had been sprayed with a parathion bomb. One short answer to this contention is that it is based on the fallacious premise appellees knew the house had been sprayed with such a bomb. As has been previously indicated, the jury found appellees had no knowledge that such was the case. Another answer, and for this purpose we may assume arguendo that appellees were told the house had been sprayed with parathion, is that, under the uncontroverted evidence, appellees were informed by Miss Hobbs the house would be safe to enter the day after the final spraying. They had a right to rely on this assurance. In the face of the record presented the very most that can be said for appellants' contention is that the evidence respecting contributory negligence is of such character as to present a question of fact for the jury's determination. That question, as we have seen, was determined contrary to their position. Furthermore, it is an established rule of law that one is not guilty of negligence who does not look for danger where there is no reason to apprehend any. (*Kurdziel v. Van Es,* 180 Kan. 627, 632, 306 P. 2d 1959.)

A further contention is made by appellants to the effect that presence of the parathion spray in the bathroom which, of necessity includes the bathtub, was at the most a patent defect in the real estate and that landlords are not liable for injuries sustained by tenants as a result of such defects. We do not question the rule of law set forth in several cases cited by appellants in support

of this contention. The trouble from their standpoint is that here the poison parathion spray was invisible and odorless and not susceptible of discovery by ordinary careful observation. In our opinion, the presence of the spray constituted a latent defect in the premises under the existing facts and circumstances.

Next it is claimed that the trial court erred in allowing Eldon Means, a consulting chemist and chemical engineer, who stated he had taken a course in biological and toxicological work, in which the whole family of products similar to parathion was considered, to testify as to the effects of parathion on the human body and as to the time the spray would remain on the bathtub. No useful purpose would be served by detailing the challenged testimony of this witness or the arguments made with respect thereto. It suffices to say that as long ago as *The State v. Cook,* 17 Kan. (2d) 392, this court held that a chemist is qualified to testify to the effect of poison upon the human system, although he may not be a physician or surgeon. And add, that after a careful and extended examination of the record, we are satisfied that, contrary to appellants' contentions, adequate foundation was laid to permit the above mentioned testimony of this witness, and other challenged testimony of less importance, to which we deem it unnecessary to here make reference. Indeed, our review of the record discloses some rulings which, if it were necessary to discuss them, might compel a conclusion such witness was unduly restricted by the trial court in connection with certain testimony which was properly within the scope of his expert opinion.

Finally appellants contend that the trial court, over objection, instructed the jury to include in its verdict, in the event it found for the appellees, damages for "future expectancies, including the loss of future pecuniary earnings," if any, resulting to them from the death of their child. In connection with this claim they first urge that such damages were not specifically pleaded in the petition, hence they were not involved in the case. If appellants mean that appellees did not specifically plead any of the elements of damage allowed by the wrongful death statute (G. S. 1957 Supp., 60-3203) this contention is without merit. Appellees in their petition clearly alleged that they suffered extreme mental anguish, loss of society, companionship, comfort and protection and loss of affection as a result of the death of their daughter. If such contention is read more narrowly to mean that appellees did not

specifically plead loss of future earnings by reason of Donna's death it is also without merit and cannot be upheld. It must be remembered this action was commenced under our wrongful death statute (G. S. 1957 Supp., 60-3203) which gave the appellees a right to maintain a cause of action against the appellants for the wrongful death of their daughter and that all they were required to do in order to state a cause of action, under its terms, was to allege facts establishing such wrongful acts were the proximate cause of her death, whereby they sustained damages in an amount not exceeding the statutory limit. The fact, as appellants contend, the statute provides that damages may be recovered under its terms for, but not limited to, certain items therein described does not mean appellees were required to specifically plead such items in order to recover, within the amount claimed under their general allegation of damages, all such damages as are ordinarily and usually sustained by parents by reason of the wrongful death of a child. Support for this conclusion is to be found in well-considered decisions.

See *Railroad Co. v. Morasch,* 8 Kan. App. 61, 54 Pac. 323, involving the same contention in respect to our then wrongful death statute, which, it may be added, contains no distinguishing features from the standpoint of the question now under consideration, where it is held:

"In an action under section 422 of the code (Gen. Stat. 1889, ¶ 4518, Gen. Stat. 1897, ch. 95, § 418), it is not required that the petition state how the plaintiffs were injured pecuniarily to state a cause of action; nor is it necessary that it allege special damages, to entitle the plaintiff to a verdict." (Syl. ¶ 1.)

And in the opinion said:

"  . . . Under this assignment counsel contend, first, that the petition was defective, in that there was no sufficient allegation of pecuniary or special damage to the plaintiffs as next of kin. It is sufficient to say that as to special damages there were none claimed or allowed, but only such general damages as are contemplated by the provisions of the statute giving the right of action. It is not necessary for the petition to contain allegations of the particular loss to plaintiffs occasioned by the death of the infant nor the evidence by which they expected to sustain the allegation of damage. The general allegation was sufficient. . . ." (pp. 64, 65.)

For well-recognized legal treatises, supporting the views heretofore expressed, while dealing with the same question so far as it relates to wrongful death statutes, see 16 Am. Jur., Death, p. 200 § 287, and 25 C. J. S., Death, pp. 1194, 1195 § 74.

The second portion of appellants' final contention is that the

court's instruction was erroneous because the challenged damages were not established by any evidence. We disagree. The record is replete with testimony that the Stertz' family relationship and home life was markedly changed and disrupted by Donna's death and that she was an affectionate and loving child and was missed by her parents. On the specific element of loss of future earnings, we have heretofore pointed out that there was evidence establishing Donna was an active, healthy and vigorous child, who was well-behaved and dutiful and close to her parents. That, under our decisions in *Railway Co. v. Fajardo,* 74 Kan. 314, 323, 86 Pac. 301, and *Briley v. Nussbaum,* 122 Kan. 438, 252 Pac. 223, rehearing denied in 123 Kan. 58, 254 Pac. 351, which it is to be noted were actions by parents to recover damages for the wrongful death of children, was sufficient evidence to permit the jury to determine, under the circumstances disclosed by the evidence, whether or not she would contribute to the support of her parents, and to take that matter into consideration as one element of damages to be allowed in its verdict.

We find nothing in the record or in the claims of error relied on by appellants to warrant a reversal of this judgment. Therefore it must be affirmed.

It is so ordered.