No. 50,805

TROY E. LEMLEY, an infant, by and through Garland Lemley, his Guardian, *Plaintiff-Appellee,* and GARLAND LEMLEY, *Plaintiff,* v. LOUIS R. PENNER, *Defendant-Appellant.*

(630 P.2d 1086)

Opinion filed July 17, 1981.

*Michael H. Farley,* of Prairie Village, argued the cause, and *Andrew D. Lyons,* of Prairie Village, was with him on the brief for the appellee.

*Park McGee,* of Olathe, argued the cause and *Robert Owen Watchous,* of Olathe, was with him on the brief for the appellant.

The opinion of the court was delivered by

HERD, J.: Defendant-appellant, Louis R. Penner, appeals from a jury verdict in the amount of $8,000 in favor of Troy E. Lemley, plaintiff-appellee, for injuries sustained as a result of a fall through an interior wall of the house rented by the Lemley family from Penner. In an unpublished opinion, the Court of Appeals affirmed the award of damages to Troy Lemley. We granted Penner's petition for review to resolve the issue of the landlord's liability.

Louis Penner purchased the house located at 405 Ottawa, De Soto, for rental property in 1948. No major repairs had been made to the house since its purchase, although from time to time Penner furnished paint and materials to the tenants or hired the

work done. He personally had neither painted the walls nor cleaned the house after successive tenants had moved.

In 1972, Garland Lemley and his family learned the house was for rent and made inquiry of Penner. The Lemley family consists of Garland, his wife and three children, one of whom is Troy. They looked at the house, got the keys from Penner, returned to the house and inspected the interior. They rented the house for $75 a month pursuant to an oral lease. Penner made no representations regarding the condition of the house nor did the Lemleys request information as to its condition. The Lemleys made no suggestions to Penner that the house needed repairs until after the accident.

On November 24, 1973, the weather was bad and the children were home from school playing hide-and-seek inside the house. Troy hid in the living room closet. The closet wall broke through causing Troy to fall into the basement, striking his head and back. The rear wall of the closet was constructed with one thickness of fiberboard nailed to two-by-four studs on eighteen inch centers.

Troy sustained an injury described as aggravated spondylolisthesis for which he underwent surgery at a cost of $2800-$3000. Garland Lemley paid for the surgery. Dr. Nathan Schechter, M.D. testified further corrective surgery would be required on Troy. Dr. David W. Francisco, M.D. testified he did not believe additional surgery would be necessary but if it were needed, he estimated it would cost $2000.

Troy sued through his father to recover for his own injuries. Garland Lemley sued to recover the money he had already paid for Troy's surgery. Penner's motion for directed verdict at the close of the case was overruled and the case was submitted to the jury. The jury rendered a verdict for Troy Lemley in the amount of $8000. Garland Lemley was denied recovery due to his contributory negligence. Penner moved for judgment notwithstanding the verdict or a new trial. The court overruled the motions and this appeal followed.

Penner raises the same issues he raised before the Court of Appeals: (1) Whether the district court erred by overruling his motions for a directed verdict and for judgment notwithstanding the verdict; (2) whether the trial court erroneously refused to reduce the jury award of damages from $8000 to $5000 on the alleged ground that the jury's award to Troy Lemley included an amount for medical expenses incurred by Garland Lemley; (3)

whether the trial court erroneously refused to grant a new trial on account of juror misconduct; and (4) whether the trial court erred by refusing to grant a new trial because of erroneous admissions of testimony and/or improper jury instructions.

The standard for appellate review on motions for directed verdict is well established: All facts and inferences reasonably to be drawn from the evidence must be resolved in favor of the party against whom the ruling is sought and if the evidence is such that reasonable minds could reach different conclusions thereon, the motion should be denied. *Guarantee Abstract & Title Co. v. Interstate Fire & Cas. Co.,* 228 Kan. 532, 539, 618 P.2d 1195 (1980); *Care Display, Inc. v. Didde-Glaser, Inc.,* 225 Kan. 232, Syl. ¶ 5, 589 P.2d 599 (1979); *Frevele v. McAloon,* 222 Kan. 295, Syl. ¶ 5, 564 P.2d 508 (1977); *Langhofer v. Reiss,* 5 Kan. App. 2d 573, 578, 620 P.2d 1173 (1980). Additional rules governing motions for directed verdict are stated in *CIT Financial Services, Inc. v. Gott,* 5 Kan. App. 2d 224, 231, 615 P.2d 774, *rev. denied* 228 Kan. 806 (1980):

"A motion for directed verdict may not be sustained unless the evidence is insufficient to support a verdict for the party against whom it is directed. (Citations omitted.) In considering a motion for a directed verdict on an issue of fact, the trial court should not weigh conflicting evidence or consider the preponderance thereof."

Motions for judgment notwithstanding the verdict are governed by the same rules. *Traylor v. Wachter,* 227 Kan. 221, 607 P.2d 1094 (1980).

The parties agree the sole theory of recovery is for concealment of a dangerous condition. The case of *Borders v. Roseberry,* 216 Kan. 486, 532 P.2d 1366 (1975), discusses the rules with respect to recovery under that theory. In *Borders,* a social guest of the tenant sued the landlord to recover for injuries sustained when the guest slipped on ice formed by dripping water which accumulated because the landlord neglected to replace the guttering which had been removed from the roof on a prior occasion. Borders sued on the theory that a defective condition existed at the time the tenant took possession of the premises. The court stated the general rule that a landlord has no liability, either to the tenant or to others entering onto the land, for defective conditions existing at the time of the lease. This rule is based on the law that the lessee, as the person in possession, has the burden of maintaining the

premises in a reasonably safe condition. *Bailey v. Kelly,* 93 Kan. 723, 145 Pac. 556 (1915). There are, however, exceptions to the rule exempting the landlord from liability for injuries arising from defective conditions existing at the time of the lease. The first exception, set forth in Restatement (Second) of Torts § 358 (1965), is as follows:

"(1) A lessor of land who conceals or fails to disclose to his lessee any condition, whether natural or artificial, which involves unreasonable risk of physical harm to persons on the land, is subject to liability to the lessee and others upon the land with the consent of the lessee or his sublessee for physical harm caused by the condition after the lessee has taken possession, if
    (a) the lessee does not know or have reason to know of the condition or the risk involved, and
    (b) the lessor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to expect that the lessee will not discover the condition or realize the risk.
"(2) If the lessee actively conceals the condition, the liability stated in Subsection (1) continues until the lessee discovers it and has reasonable opportunity to take effective precautions against it. Otherwise the liability continues only until the vendee has had reasonable opportunity to discover the condition and to take such precautions."

The court listed several cases in which this exception had been applied and pointed out that the exception applied only "to latent conditions and not to conditions which are patent or reasonably discernible to the tenant." *Borders,* 216 Kan. at 489.

Patent defects were found in the following cases: In *Branstetter v. Robbins,* 178 Kan. 8, 283 P.2d 455 (1955), plaintiff sued defendant owners of property occupied by plaintiff and her husband for a loss of one eye and loss of the sight in the other. Plaintiff claimed she received the injuries to her eyes from a bottle of barnyard spray discovered in a food cabinet. There were no warnings on the bottle and she had been given no warning by the owner of the property of the existence of the bottle. The court held the presence of the spray was not unusual on the farm premises, it had not been concealed and there was no evidence to show she could not have discovered the spray when she took occupancy of the rental unit.

The dangerous characteristics of a gas heater which tragically burned a young woman to death were found to represent a patent defect not hidden and easily discoverable to the tenant in *Tillotson v. Abbott,* 205 Kan. 706, 472 P.2d 240 (1970).

Finally, in *Bailey v. Kelly,* 93 Kan. 723, this court considered

an action against a landlord to recover damages resulting from the death of the tenant's servant who fell into a defectively covered cistern. The court found the tenant knew of the existence of the defect when he took possession of the leased premises. The tenant had pointed out the cistern to the servant but had failed to warn her of the danger. In discussing the concept of legal duty, this court held the landlord was not liable for the death of the servant resulting from a dangerous condition known to the tenant.

Latent defects were found in *Stertz v. Briscoe,* 184 Kan. 163, 334 P.2d 357 (1959), and *Moore v. Parker,* 63 Kan. 52, 64 Pac. 975 (1901). In *Stertz,* parents brought a wrongful death action for the death of one of their daughters as a result of poisoning. The family lived in a rental house on greenhouse property. Before they moved in, the manager of the greenhouse told them the house would be sprayed with a "bomb" of some kind. After spraying, the house was aired out by the sprayer, but he was unable to pry open the bathroom window to air that room. A week after moving in, two of the girls filled the bathtub with water. Both became sick and died that evening as a result of poisonous residue left in the tub which mixed with the water and entered their bloodstreams. The court held the presence of the spray, an invisible, odorless poison, was a latent defect in the premises and the landlord was liable. In *Moore,* a tenant on a farm fell through a platform covering a well while drawing water from the well. She alleged the owners of the farmhouse knew the platform was constructed from inferior and unsuitable material and that the foundations of the platform were in defective and unsafe condition. The court held the landlord liable because he concealed the fact the well was dangerous.

As to the parties' knowledge of the dangerous condition, the record reveals both the tenant and the landlord had equal knowledge of the defects in the house. Penner's testimony shows he made no representations to Lemley as to the condition of the house nor did he make any offers to repair it. He was not aware that if a person fell against the closet wall, he would go through and land in the basement. Penner made no comment to the Lemley family regarding the suitability of the house based on building materials in the structure of the house. He testified that between 1948 and 1973, the only repair made in the house was to

a fiberboard wall which had been broken through. He had never tested the walls for strength.

Garland Lemley stated he knew the walls were soft and would not hold pictures. Lemley warned his wife about moving furniture around in the living room because hitting the walls with the edges of the furniture made holes. He had never requested that repairs be made. Lemley admitted the closet wall which Troy fell through could be seen from the stairs leading to the basement but stated he did not realize the wall was the back of the closet.

After reviewing the cited cases and the evidence of each party's knowledge, we conclude the defect in this case was as easily discernible to the tenant as it was to the landlord and the landlord owed no duty of disclosure to the tenant, Garland Lemley. As a member of the tenant's family, Troy Lemley's claim for damages must also fail. In support of that conclusion, we rely on the case of *Hanson v. Luft,* 58 Cal. 2d 443, 24 Cal. Rptr. 681, 374 P.2d 641 (1962). In *Hanson,* a five-year-old child brought an action against the landlord for injuries suffered in the form of burns she received from a gas heater. The court stated the rule that a landlord's liability to invitees of the tenant, including members of his family, is not greater than it would be to the tenant himself. Tiffany, Landlord and Tenant § 96(b) (1912), states:

"The lessee's knowledge is in effect imputed to the person injured, or rather, perhaps, it is the lessee's duty, not the lessor's, to inform persons, entering on the premises by the former's invitation or permission, of the dangerous condition. A different rule, requiring the lessor to give such information to every person whom the lessee may allow upon the premises, would impose on the lessor the duties of an occupant while divested of the benefits, and would in effect prevent the leasing of any premises in which there is a concealed source of danger to persons who might enter thereon."

The court held the danger was patent and was as obvious to the parents as to the landlord. The court in *Hanson* stated at pages 446-47:

"It has been held in a number of cases in other jurisdictions that where premises are let to the parents of children with conditions existing which present a patent and obvious danger of injury to such children the duty of protecting the children from such obvious dangers rests upon the parents who have elected to become tenants of such premises with knowledge of the condition of the danger to their children; and that the landlord cannot be held liable for injuries suffered by the children from such obvious and patent dangers."

See also *Hamilton v. Ling,* 1 Kan. App. 2d 22, 25, 561 P.2d 880, *rev. denied* 225 Kan. 844 (1977).

We hold the trial court erred in overruling defendant's motions for directed verdict and judgment notwithstanding the verdict. In light of our holding, we will not consider appellant's remaining issues.

The judgment of the trial court is reversed and judgment is entered for the appellant at the cost of the appellee.