SAVOY, Judge.
Plaintiff filed a suit under the Workmen’s 'Compensation Act against his employer, ■Curtis Spears, and his insurer, Travelers Insurance Company, for maximum work-.men’s .compensation benefits resulting from an injury which he alleged occurred while in the course of employment on July 27, 1962.
The defendants filed an answer generally denying the allegations of plaintiff’s petition.
Travelers paid plaintiff compensation from July 20, 1962, through August 31, 1962.
After a trial on the merits, the district judge found that plaintiff suffered his injury on July 20, 1962, instead of July 27, 1962, as alleged in plaintiff’s petition; and stated that he had recovered from his injury as of August 31, 1962.
From the judgment of the district court, plaintiff has appealed to this Court.
After a reading of the record, we are in accord with the written reasons assigned by the district judge in the instant case, and adopt said written reasons, in part, as our own opinion herein, to-wit:
“Plaintiff brings this suit against his employer, Curtis Spears, and his insurer, The Travelers Insurance Company, for maximum workmen’s compensation benefits.
“Plaintiff alleges that he hurt his back when he slipped while lifting a stump on July 27, 1962. He claims total and permanent disability.
“Defendants filed a general denial. They averred, however, that cognizance was taken of plaintiff’s alleged injury and he was furnished competent medical treatment by Dr. R. A. Oster, and was further examined by Dr. T. E. Banks, Orthopedic Surgeon, who advised defendants on August IS, 1962, that plaintiff had no evidence of disability and was able to return to his same occupation. Defendants averred further that they had paid plaintiff compensation at the maximum rate from the date of the injury, July 20, 1962, to August 31, 1962.
“Although plaintiff alleged in his petition that the accident occurred on July 27, 1962, *278 the evidence at the trial established that date as July 20, 1962.
“Ingram was treated by Dr. R. A. Oster at Broyles Clinic in Leesville, Louisiana, who also referred him to Dr. T. E. Banks, an orthopedic surgeon, in Alexandria, for consultation. In the latter part of August, 1962, Dr. Oster released plaintiff. Ingram was paid the maximum compensation from the date of his injury to August 31, 1962.
“The issue is whether Ingram was disabled subsequent to August 31, 1962, and at the time of the trial.
“The first physician to see Ingram was Dr. Oster, a general practitioner, who first saw him on July 24, 1962, and who last saw him on August 23, 1962. At the time of the trial Dr. Oster had moved to Boulder City, Nevada and by stipulation a narrative report made by him was introduced in evidence in lieu of his testimony * * *. According to that report Dr. Oster first examined Ingram on July 24, 1962. Ingram stated that he ‘felt something give’ while lifting a stump on July 20, and that night he noticed painful swelling in his right upper back, which increased in size during the next four days, and he experienced numbness of the entire left arm. Physical examination revealed a 6 x 8 cm. firm, non-movable, well defined subcutaneous mass along the medial aspect of the right scapula, which had the appearance of a lipoma. Dr. Oster stated that Ingram complained of pain of a few minutes duration each time the mass was palpated, no matter how slightly it was touched, and in fact he complained of pain whenever any portion of his back was touched. The remainder of the examination revealed no pertinent abnormalities. Ingram was given Empirin tablets, and instructed to return the next day. On July 25, thoraco-lumbar x-rays were taken, which revealed no abnormalities. He was treated with diathermy and given prescriptions for Thorozine and Parafon. Ingram returned the next day complaining of pain in the area of the li-poma and he was given another diathermy treatment. He returned on July 30 with the same complaints and the same treatment was repeated. Dr. Oster then referred Ingram to Dr. Banks, who examined him on August 8 and stated in his report T do not feel that any definite evidence of disability is remaining’. Ingram was last seen by Dr. Oster on August 23, 1962, for another illness and at that time Ingram stated that there was no change in his condition. Dr. Oster concluded his report with the following statement:
“ ‘It would appear anatomically impossible for a light touch on the right side of the back to cause pain and numbness of the left arm since the peripheral nervous system is constructed of a series of pairs of nerve roots, one nerve of each pair supplying nerve fibers to only one side of the body. Because of this and the lack of x-ray or other objective evidence of injury it does not appear likely that Cooley Ingram suffered anything more than an acute muscle strain (if that).
“ T cannot say that I noted any evidence of psychological abnormalities during my examinations.’
“Dr. Banks, an orthopedic surgeon, examined Ingram twice. The first examination was made on August 8, 1962. Dr. Banks noted the large mass overlying the right scapular, which he felt to be of long standing and not being acute in duration. He found no muscle spasm in the low back. The clinical examination was normal. Dr. Banks made an x-ray examination of the dorsal spine and the cervical spine. He felt that the x-rays showed no lesion of the thoracic area, there was no injury to the rib cage and there was no evidence of damage to the cervical region. The subcutaneous lipoma was found not to have any bony component. He found a congenital fusion between the bodies of the third and fourth cervical vertebra, which lie felt to be congenital and not related to the injury and producing no symptoms. Dr. Banks concluded from his examination that Ingram *279 showed no definite evidence of clinical disease, that he probably had according to history a mild strain for which he had been treated and apparently recovered, and he felt that he could return to his former occupation.
“Dr. Banks examined Ingram on December S, 1962, at which time he was complaining of pain in his low back and pain in both legs. The examination included basically what was done on August 8, a little more in detail for the lower back because that was the area of complaint and not of the upper back as before. Dr. Banks found that Ingram resisted forward flexion of his back as well as straight leg raising complaining of pain in those areas. Despite this Ingram was able to sit with his legs extended without complaint, and Dr Banks felt that this was contradictory since the movements involved the same physical action, and was entirely voluntary on the part of the patient. On examination of the back Dr. Banks found no muscle spasm present. There was no evidence of tenderness over the lipoma on pressure. Examination of the lower extremities revealed no atrophy of either thigh or calf. No reflex abnormalities were present. Ingram appeared to be normal mentally. In conclusion, Dr. Banks stated:
“ ‘It is my impression at the conclusion of this examination that this man was exaggerating his symptoms, and if he had anything wrong with him by his over reactions he was not making it possible for the examiner to find it. On that basis I felt that this man was classified as a malingerer and felt he did not need treatment.’
“Dr. Richard W. Levy, a neurosurgeon in New Orleans, examined Ingram on December 21, 1962. Ingram complained of pain in his low back and numbness in his left arm. There was no complaint at all refer-rable to the right upper extremity or either lower extremity. Dr. Levy’s neurological •examination was conducted with reference to the neck, both upper extremities, the trunk and both lower extremities and the result of that examination was completely negative. Dr. Levy found no restriction of motion and tenderness or spasm in the cervical region. In the low back region he found no muscle spasm in the lumbar region and Ingram was able to bend from the waist with his knees stiff forward to 90 degrees, bringing his finger tips to within one inch of the floor. Backward bending and lateral bending to either side was unrestricted. His straight leg raising test used in determining back pathology was completely negative. Dr. Levy did not believe that Ingram was truthful in his complaint of numbness in his lower extremities. He stated that he had tested him, without Ingram observing him, and Ingram reported no sensation in the areas supposedly affected when Dr. Levy touched him. In conclusion, Dr. Levy stated that he found no evidence of any organic neurological disability in Ingram, no further treatment was indicated and that there was no reason why he could not return to work.
“Plaintiff was referred by his attorney to Dr. Ray E. King, an orthopedic surgeon in Shreveport. On January 28, 1963, Dr. King performed a complete myelogram from the lumbo-sacral region up through the thoracic and into the cervical region. No disc defects or abnormalities were seen in either the cervical or lumbar regions of the spine and there were no defects in the thoracic region. The myelogram was completely negative. Dr. King did not testify but his report was admitted in evidence by stipulation and marked Exhibit D-2.
“Dr. J. E. Hearn, a general practitioner of Leesville, testified that he had seen and treated Ingram on numerous occasions between September 13, 1962 and April 8, 1963. He had given him conservative treatment. Pie stated that at times there was complete absence of objective findings, while at other times he found muscle spasm and reduced reflexes which he admitted could be due to other causes. Dr. Hearn admitted that Ingram had few of the usual disc symptoms, *280 and it was at his suggestion that the myelo-gram was performed by Dr. King. Dr. Hearn was of the opinion that plaintiff had suffered a back sprain from which he could recover in about two months.
“Dr. J. W. Pressler, a general practitioner at Leesville, testified that he saw Ingram on two occasions at Broyles Clinic in the absence of Dr. Oster. He stated that he detected an anxiety state in Ingram, although he was not a psychiatrist and made no psychiatric examination. He also stated that there was a possibility that Ingram was a malingerer.
“Finally Ingram was sent by his attorney to Dr. David son H. Texada, a neuro-psy-chiatrist of Alexandria. Dr. Texada examined Ingram on February 13, 1963, for his organic complaints and he conducted a psychiatric examination on February 22. At the examination of February 13, Dr. Texada noted limitation of flexion of his back, both front and back on bending. There was some spasm over the left lumbar region of the back. Dr. Texada did not reach a conclusion and asked to see Ingram again, which he did on February 22, when he conducted a psychiatric examination and made further evaluation of his complaints. Dr. Texada stated that on this examination Ingram had clear sensorium, good memory, his thinking coherent with no psychotic manifestations; that he insisted that he had severe pain in his back, and he resisted the idea that this could be emotional or mental in origin; that he admitted to concern about his future and day to day living expenses, but he had not particularly noted that any of those factors had influenced his back pain. It was Dr. Texada’s opinion that Ingram had sustained a back injury and still suffered back pain; that in spite of the negative myelogram the possibility of herniation of a disc was still present; that an anxiety state had become associated with his condition, leading to functional symptoms; and that Ingram was incapacitated from any work involving hard physical labor. On cross-examination Dr. Tex-ada admitted that Ingram had few of the usual disc symptoms, and that from the-physical findings a diagnosis could not be-made that he had a disc. Dr. Texada also, admitted that the muscle spasm which he-had found could have resulted from the myelogram which Dr. King performed on-January 28. Dr. Texada also admitted that Ingram’s anxiety state was no more than-a contributing factor and he based his. views primarily on organic disability as-appears from the following excerpt from page 6 of his deposition on cross-examination :
“ ‘Q. You stated, I believe, that this anxiety state was a contributing factor but it was impossible to. tell how much — do you feel (that if) this man had no organic deficit that he would be disabled' from the anxiety deficit alone?
“ ‘A. If my feeling about this man is correct, I would feel personally that if he didn't have back disease I do not think he would be incapacitated.
“ ‘Q• I gather, although you didn’t say so in so many words, that you are more impressed with his organic disease than you are with the psychiatric, or am I being too general ?
“ ‘A. That’s correct.
“ ‘Q. You are more impressed with his organic deficit?
“ ’A. Yes sir.’
“From the foregoing it appears that Dr.. Texada did not feel that Ingram had a disabling psychic illness if he was not organically disabled.
“Dr. Texada did not regard Ingram as permanently disabled, that his chances for recovery were good, but he would give no definite prognosis without further visits.
“From the foregoing it appears that the medical testimony is conflicting and it is the, duty of this court to evaluate the evidence.
*281 “It is the conclusion of this court that the opinion of Dr. Oster, who was the original treating physician, and the opinion -of Dr. Banks, the orthopedist who examined plaintiff within twenty days of his injury, are entitled to greater weight than the opinions of Drs. Hearn and Texada, who •examined plaintiff at much later dates. Both Dr. Oster and Dr. Banks had the opportunity to examine Ingram while the •effects of the accident were fresh and still with him and certainly they were in a "better position to evaluate Ingram’s condition. Both concluded that he had suffered ■a muscle strain from which he had recovered in August of 1962. Dr. Banks had ■a second opportunity to evaluate Ingram on December S, 1962, and his findings of August 8 were again confirmed. The opinions ■of Drs. Oster and Banks were also confirmed by the opinion of Dr. Levy, who found no evidence of organic disability, and the negative report of Dr. King who performed the myelogram.
“Dr. Texada’s findings of limitation of flexion on bending and muscle spasm are in •direct conflict with the findings of Drs. •Oster, Banks and Levy, for in none of their ■examinations did they find muscle spasm and Dr. Texada’s insistence that a herniated disc could not be ruled out in spite •of the negative myelogram and the absence of many of the usual disc symptoms does not impress this court. As to Ingram’s anxiety state, Dr. Texada admitted that he was basing his views of disability primarily •on organic disability and he felt that if Ingram did not have organic disability, he would not be incapacitated. He did not make a positive diagnosis of traumatic neurosis. Drs. Oster, Banks, and Levy all •stated expressly that they did not think that Ingram had a psychiatric problem. It is also observed that Ingram’s petition claims •disability by reason of organic defects and no where in his petition does he claim disability by reason of traumatic neurosis.
“Considering the evidence as a whole, it is the opinion of this court that the preponderance shows that Ingram had recovered from his injuries as of August 31, 1962. * * * ”
For the reasons assigned, the judgment of the district court is affirmed at appellant’s costs.
Affirmed.