YARRUT, Judge.
This is a suit for workmen’s compensation. Plaintiff was employed as a freight handler by the Defendant, Anheuser-Busch Company, and was injured while unloading a boxcar for his employer on the tracks of the Illinois Central Railroad. The Railroad was made a third-party Defendant on the allegation that Plaintiff’s injury was due to the unsafe condition of its freight car.
The Railroad was dismissed as third-party Defendant by the district court, and all parties agree that the Railroad was not guilty of any negligence because the freight car was delivered to it loaded and sealed, and was thereafter opened only by the Defendant employer.
There is no doubt that Plaintiff was injured during the course of his employment; and no doubt about the wage he was earning at the time. The only open question is the nature, extent and duration of the back injury he sustained.
Plaintiff sued for 400 weeks at $35 per week, plus medical expenses. The Defendants (the employer and insurer) admitted the injury, but stated that Plaintiff was paid nine weeks compensation, plus medical expenses of $240, until he was discharged as fit to return to work September 26, 1963 by their medical examiners.
The trial judge, without giving written reasons, rendered judgment for Plaintiff at the rate of $35 per week for a maximum of 400 weeks, beginning August 19, 1963, with interest, plus $240 medical fees and a $75 expert fee for Dr. Salatich. Dr. Sala-tich’s total bill was $480. The court dismissed the third-party action against the Railroad in which all parties have concurred.
Since the only question in this case is the nature, extent and duration of the Plaintiff’s injuries and disability, the case must be decided primarily upon the medical testimony. In this respect three doctors, Richard W. Levy, Herman Rabin and Irving Redler, testified on behalf of Defendants ; and two doctors, R. C. Grunsten and Meyer D. Teitelbaum, submitted reports on behalf of Defendants. The only doctor to testify for the Plaintiff was Blaise Salatich. The findings of Dr. Grunsten and X-ray report of Drs. Teitelbaum and Schneider were entered in the record by stipulation. A brief summary of the testimony of the respective doctors is as follows:
Dr. R. C. Grunsten’s (of Drs. Soboloff & Grunsten) written report of December 8, 1964, of his examination admitted in evidence, gives a full detail of his findings, followed by his conclusion, which reads:
“It is the opinion of this examiner that this patient presents rather excellent mechanical functioning capacity to the low back area today. No spasm or muscle guarding is apparent and no evidence of active nerve root irritation can be identified. The patient spontaneously states that he feels better and wants to go back to his regular work. X-ray studies of the low back and pelvis are within normal limits.
“We see no evidence of injury residual on the occasion of this examination and no indication to restrict this patient’s activity. It is accordingly recommended that he be permitted to resume his normal daily activity and discontinue the use of this slightly worn corset.”
Dr. Meyer D. Teitelbaum (of Drs. Tei-telbaum & Schneider) in his report of December 12, 1964, reported:
“Examination of the lumbar spine reveals no disalignment. Moderate-sized antero-lateral marginal osteophytic projections on the second, third and fourth bodies are attributed to degenerative changes. The vertebrae otherwise are normal in contour, structure and dimensions and exhibit no other evidence of disease or injury. The disc spaces are not remarkable. The sacroilliac synchondroses are normal.
“An anteroposterior film of the entire pelvis including the hips and proximal *335 femurs reveals the component hones to be normal in contour, texture and density. The hip joint spaces are of average and equal width and the articular surfaces are smooth. No evidence of injury or disease is demonstrated.”
Dr. Richard W. Levy, neurosurgeon, who examined Plaintiff on three different occasions, testified:
August 5, 1963:
“My neurological examination revealed no mechanical low-back signs and no evidence of nerve root compression in either lower extremity.
“It was my opinion that this man did not have evidence of injury or disease of the lumbo-sacral area or nerve roots. I had no recommendation to make concerning other neurological diagnostic studies or treatment. In conclusion, it was my belief that from the neurological standpoint he had no disability.”
June 8, 1964:
“My examination on this occasion was again carried out referrable to the lower back and both legs; and again the examination failed to reveal any mechanical lower back signs of any signs of nerve root complaint in either lower extremity. There was no difference between the findings on the first examination and those on the second examination.”
February 12, 1965:
“Q. Did you form an opinion as to whether or not Elliott Stuart could return to work, relative to his neurological condition?
“A. Yes, I formed the opinion and advised he could return to work.
“Q. Was this true on each of the three (3) occasions that you examined him?
J,A. Yes.”
Dr. Herman Rabin, physician and surgeon, testified to the examination made, and concluded :
“On September 25th, 1963, after checking this patient innumerable times he continued to complain about bizarre symptoms not compatible with a back injury. At the present time he flexes the lumbar curve to about forty-five (45°) degrees in a standing position; however he is able to assume a sitting position with the back completely flexed, reversing the lumbar curve. There is no evidence of muscle spasm. Straight-leg-raising test was within normal limits; cross-leg raising tests were normal; striking the patella and Achilles reflexes caused pain in the lumbar area, which is compatible with a back injury or back disease. Under these circumstances we feel that this patient has no need to wear a lumbo-sacral belt; that he has certainly received adequate therapy; he can return to his former occupation with no permanent or residual disability.
“This will probably be a disputed case, as the patient still states he has multiple subjective complaints.”
“Q. What date did you discharge Elliott Stuart as being able to return to his former occupation unrestricted?
“A. September 26th, 1963.”
Dr. Irving Redler, orthopedic specialist and surgeon, who examined Plaintiff on many occasions, the last time on February 12, 1965, testified:
“Q. Did you feel, as a result of each of these examinations on each occasion that he could return to his prior employment ?
“Á. Yes, sir; I did.
“Q. On any of these examinations, did you at any time find aiiy disability of the back?
“A. I did not.
*336 “Q. That’s all, doctor. No further questions.”
Dr. Blaise Salatich, orthopedic surgeon, testified:
“Q. I asked you earlier about Elliott Stuart returning to work. I ask you now: Would you recommend that he do light work at this time ?
“A. Y es. I recommended this all along; but he tells me that he cannot obtain that kind of work, that he has to either ‘pick up and go’ or else • ‘push over’.
“Q. In the light of the history and your personal knowledge which you have of Elliott Stuart, do you consider him to be a malingerer ?
“A. Definitely not. And when I say ‘definitely not’ I have a reason for saying ‘definitely not’; —may I add five (5) or six (6) different reasons.”
It will be noted that even Dr. Salatich thought the Plaintiff could return to work notwithstanding' he was complaining of pain.
In a workmen’s compensation suit the plaintiff has the burden of proving' his claim with legal certainty by a clear preponderance of the evidence. Speculation, mere possibility, conjecture and even unsupported probability, are insufficient to support a judgment for a claimant. Hebert v. Your Food Processing & Warehouse, Inc., 248 La. 197, 177 So.2d 286; Taylor v. Hawkins, La.App., 153 So.2d 192; Guillory v. New Amsterdam Casualty Co., 244 La. 225, 152 So.2d 1; Page v. Home Indemnity Co., La.App., 168 So.2d 409, cert. denied, 247 La. 252, 170 So.2d 510.
The testimony of a physician who examines and treats the injured party is entitled to much greater weight than a physician examining the plaintiff at a later date (Dr. Salatich). Bankston v. Aetna Casualty Co. of Hartford, Conn., La.App., 132 So.2d 111; Jones v. Sears, Roebuck and Co., La.App., 140 So.2d 798; Ingram v. Travelers Insurance Co., La.App., 173 So.2d 277, 281; Matherne v. Wheless Drilling Co., La.App., 174 So.2d 921; Joyner v. L. L. Brewton Lumber Co., La.App., 171 So. 2d 811.
In this case all six doctors who testified were specialists; five testifying for the Defendants, and only one (Dr. Salatich) for the Plaintiff. It would follow that the unanimous findings of the majority of specialists, well qualified and of high standing in their respective fields, should be preferred over the lone specialist who differed with them. Norman v. Standard Supply & Hardware Co., La.App., 126 So.2d 776; Easterling v. J. A. Jones Construction Company, La.App., 115 So.2d 888.
For the above and foregoing reasons the judgment of the district court, awarding compensation to the Plaintiff, is reversed; and judgment rendered in favor of Defendants-Appellants, Anheuser-Busch Company and Zurich Insurance Company dismissing Plaintiff’s suit; all parties to pay their own taxable costs.
Judgment reversed and rendered. ■