HOOD, Judge.
Plaintiff, Elie Lege, sues for workmen’s compensation benefits, alleging total and permanent disability resulting from injuries which he sustained while working for Crain Brothers, Inc. The suit was instituted against United States Fidelity & Guaranty Company, the insurer of plaintiff’s employer. Judgment on the merits was rendered by the trial court in favor of plaintiff, awarding him compensation benefits for 16 weeks. Plaintiff has appealed.
The principal issue presented is whether plaintiff was disabled for a period of more than 16 weeks as the result of the injuries which he sustained in the above mentioned accident.
Lege was injured on July 23, 1961, when a truck owned by Crain Brothers was struck by a vehicle owned by Willis E. Sears, causing a rear wheel of the Crain truck to roll partially over plaintiff’s chest and body. Immediately after this accident occurred defendant began paying workmen’s compensation benefits to plaintiff, and it continued to make these payments to him for a period of more than two years.
In December, 1961, plaintiff instituted a suit in Cameron Parish for damages for the personal injuries which he sustained in the above described accident. Sears and his insurer were included among the defendants named in that suit. The United States Fidelity and Guaranty Company intervened, praying that it be reimbursed the amounts which it had paid to plaintiff as workmen’s compensation benefits.
In that tort action plaintiff alleged that he sustained a number of injuries as a result of the above mentioned accident. Among those alleged injuries, and the ones which he now particularly claims are disabling, were: (1) Fracture of six ribs; (2) left inguinal hernia; and (3) low back injuries. He also alleged in the tort action that as a result of those injuries he is “totally and permanently disabled and completely unable to perform any type of work whatsoever.”
After trial of that case on its merits, the trial judge concluded that the rib fractures had healed normally, and that plaintiff’s disability from that particular injury covered a period of about four months. The trial judge found that plaintiff had a hernia at the time of the trial, but that it was not caused by the accident. And, • he concluded that the evidence failed to establish that plaintiff sustained “any injury, or aggravation of any previous condition, in the low back that resulted in any disability.” In computing the amount of the damages which should be awarded to plaintiff, the trial judge included an item for loss of wages for a period of only four months from and after the date of the accident. Judgment was rendered on January 27, 1964, in favor of plaintiff, and against Sears and his insurer, for $5489.62, but it provided that the intervenor was to receive $5075.27 out of the amount awarded to plaintiff as reimbursement for the compensation benefits which it had paid to plaintiff. We affirmed that judgment of the trial court. See Lege v. Pioneer Casualty Company, 164 So.2d 634 (La.App. 3d Cir. 1964).
*763 The instant suit was instituted in Vermilion Parish on October 16, 1964. Here plaintiff demands compensation benefits, alleging that he is totally and permanently disabled as the result of the same injuries which formed the basis for the tort action. Defendant promptly filed an exception of res judicata and a plea of estoppel, contending that the issues as to the nature of plaintiff’s injuries and the duration of his disability were adjudicated in the tort action, and that those issues are now res judicata. The trial court sustained the exception of res judicata and dismissed plaintiff’s suit. On appeal, we reversed that judgment and remanded the case to the district court for trial. See Lege v. United States Fidelity and Guaranty Company, 186 So.2d 670 (La.App. 3d Cir. 1966).
After the case was remanded to the trial court, the defendant filed an answer re-urging its pleas of res judicata and estop-pel, and alleging that it had a vested right in the judgment which was rendered in the tort suit. The case was then tried on its merits. At the trial, the entire record of the tort action was presented, and the only additional evidence entered was the deposition of Dr. Cecil W. Clark and the deposition of Dr. J. R. Romero, Jr. Dr. Clark had testified at the trial of the earlier tort suit. Dr. Romero, a radiologist, had not testified previously.
Following the trial of the instant suit, judgment was rendered by the trial court awarding plaintiff compensation benefits for a period of 16 weeks, subject to a credit for the payments which previously had been made to him. Plaintiff appealed from that judgment, and that appeal is before us at this time.
Defendant argues primarily that its pleas of res judicata, estoppel and vested right are applicable here, even though the plea of res judicata was considered previously by the trial court and by this court. It contends that these pleas are applicable particularly to the question of whether or not the hernia and the back condition were caused by the accident, and that those issues thus may not be re-examined by the court.
When the case was before us originally on appeal, we determined that there was no merit to defendant’s plea of res judicata (186 So.2d 670). We arrive at the same conclusion now for the reasons which were assigned at that time. We also conclude, for the same reasons, that, there is no merit to defendant’s additional pleas of estoppel and vested right.
The evidence establishes that plaintiff sustained fractures of six ribs in the accident which occurred on July 23, 1961, and that he was disabled for a period of 16 weeks thereafter as a result of that injury alone. The important remaining issues to be determined, however, are whether he also sustained a disabling hernia as a result of the accident, and whether he suffered a low back injury which, with arthritic changes occurring later, totally and permanently disabled him.
In the trial of the tort suit, which was completed in 1963, six doctors testified. Two of them, Dr. Gaulman Abshire and Dr. Cecil W. Clark, treated plaintiff for his injuries, while the others examined him primarily for the purpose of this litigation.
Dr. Abshire, a general practitioner, treated plaintiff from the date of the accident until October 19, 1961. He discharged him on the last mentioned date, presumably because he felt that plaintiff had fully recovered from his injuries although he stated that Lege still complained of some pain at that time. With reference to plaintiff’s claim that he sustained a hernia, Dr. Ab-shire testified positively that plaintiff did not have a hernia at any time while he was treating plaintiff for the injuries which he received following the above mentioned accident.
Dr. Clark, also a general practitioner, examined plaintiff initially on October 25, 1961, and he has treated him periodically since that time. He testified at the trial of the tort action that on his first examination he found a “definite inguinal hernia” *764 on the left side, and that he felt that this hernia “could very well be caused by the increased abdominal pressure due to the wheels of the truck running over his chest.”
Dr. Benjamin M. Rush, a surgeon, and Dr. C. V. Hatchette, an orthopedic surgeon, examined plaintiff some time after Dr. Clark began treating him. Both found a small left inguinal hernia. Dr. Rush, ah though acknowledging that there was no way for him to determine when the hernia occurred, felt that it was possible for that type accident to produce a hernia, and from the history which was given to him he related the hernia to the accident. Dr. Hatchette, on the other hand, felt that the type of accident to which plaintiff was subjected would not produce a hernia, and from the history given to him and his findings he could not relate the hernia to the accident.
The trial judge, in deciding the tort action in 1963, concluded that “the evidence does not establish that the hernia was caused by the accident in this case.” As already noted, we affirmed that judgment. (See 164 So.2d 634.)
The only additional evidence relating to the hernia which was produced at the trial of the instant suit was the testimony of Dr. Clark, who had testified in the earlier trial and who had continued to treat plaintiff periodically after the tort action had been finally determined. Dr. Clark’s last examination of plaintiff was made on February 20, 1967. He testified that plaintiff still had a left inguinal hernia at that time, and he again expressed the opinion that the hernia was caused by the abdominal pressure which had been applied to plaintiff’s chest and body when the accident occurred.
After reviewing all of the facts, including the most recent testimony of Dr. Clark, the trial judge .in the instant suit concluded that the injuries which plaintiff sustained “were of such a nature as to produce a limited period of disability of approximately four (4) months, and that as far as the accident of July 23, 1961, was concerned, Mr. Lege was able to return to his former occupation as a manual laborer and to pursue the same without pain or discomfort brought on by the injury of July 23, 1961.” The trial judge obviously concluded that the hernia which plaintiff now has was not caused by the above mentioned accident.
Applicable here is the rule that the trial judge’s findings of fact, particularly those involving .the credibility of witnesses testifying before him, are entitled to great weight, and his conclusions as to the facts will not be disturbed unless found to be clearly erroneous. Gulf Machine Shop v. Poynter, 192 So.2d 606 (La.App. 3d Cir. 1966).
Also applicable is the evidentiary rule that the expert opinions expressed by a physician who examines and treats the injured party ordinarily is entitled to greater weight than are those expressed by an equally qualified physician who merely examines the party at a later date. Stuart v. Anheuser-Busch Company, 185 So.2d 333 (La.App. 4th Cir. 1966; writ refused). The testimony of the physician who examined the injured party immediately following the accident is to be preferred over that of a physician who has examined him subsequently, particularly insofar as it relates to the nature of the injuries sustained. Matherne v. Wheless Drilling Company, 174 So.2d 921 (La.App. 4th Cir. 1965).
In the instant suit, Dr. Abshire not only examined and treated plaintiff immediately after the accident occurred, but he also had treated plaintiff on several occasions prior thereto. For instance, he had treated plaintiff on two previous occasions, in 1958 and in 1960, for lumbosacral strains. And, on March 21, 1960, he had assisted in performing surgery on plaintiff for the repair of a right inguinal hernia. The trial judge, in both the tort suit and in the instant suit, apparently attached considerable weight to the testimony of this treating physician.
We cannot say that the trial judge in the instant suit erred in concluding that *765 plaintiff did not sustain a hernia as the result of the accident which occurred on July-23, 1961. We, accordingly, concur in that factual finding.
With reference to plaintiff’s claim that he sustained a disabling low back injury as a result of the accident, the evidence shows that plaintiff has a spondylolisthesis, which is a congenital defect of the back and which was not caused by the accident. He apparently had some difficulty with his back before this accident occurred, because as we have already noted Dr. Abshire treated him on two prior occasions for lumbosacral strains.
Dr. Abshire, the first treating physician, testified that he found no evidence of a back injury while he was treating plaintiff immediately after the accident occurred.
Dr. Clark, the other treating physician, examined x-rays of plaintiff’s back made in 1965, and he concluded from that examination that at some time prior thereto plaintiff had sustained a compression fracture of the twelfth thoracic vertebra, that the fracture in itself was not disabling, but that some arthritic changes had taken place in that area of plaintiff’s back which he felt were disabling. Dr. Clark did not examine any of the earlier x-rays which had been made in 1961 and 1962. He conceded that the reports on those films showed that some degenerative arthritic changes in plaintiff’s back had been found shortly after the accident occurred, and that further arthritic changes occur in a person’s back even without trauma. He stated, however, that the 1965 x-rays showed that some “marked changes” had taken place in the area of plaintiff’s trauma, and he concluded that these arthritic changes which he considered to be disabling had been caused by the accident.
Dr. Edmond C. Campbell examined plaintiff on November 24, 1961. Dr. Norman P. Morin examined him on February 16, 1962, and Dr. Hatchette examined him on October 11, 1962. All of these experts are orthopedic surgeons. All made x-ray as well as clinical examinations. And, all found no fracture of the vertebra and no disc injury. They, however, did find some degenerative arthritic changes in the cervical and low back areas. With reference to the spine, Dr. Campbell testified that “there was no evidence of fracture, dislocation or any destructive lesions,” and that “the man showed no objective evidence of disability with respect to the spine or extremities.” Dr. Morin found no abnormal-ties of the spine except the spondylolisthesis and the moderate hypertrophic change. He testified, however, that the “arthritic changes antedated the injury of July, 1961,” that “there had been no aggravation of these arthritic changes,” and that he felt that plaintiff “had completely recovered from the injuries sustained July 23, 1961, with no residual orthopedic disability.” Dr. Hatchette testified that “there was no indication that his back was injured at that time,” and that the degenerative arthritic changes in the cervical spine region and in the back region antedated any injury which he might have incurred in 1961.”
Dr. J. R. Romero, Jr., a radiologist, made x-rays of plaintiff’s spine on November 8, 1961, and again on February 1, 1965. He testified that a “compression fracture” of the twelfth thoracic vertebra was shown on both of those x-rays, but he explained that by that term he meant that there was “an anterior wedging of T-12 due to a degenerative arthritic process which produced compression of the anterior portion of the vertebra with the normal wear and tear on the body.” He stated that in his opinion this degenerative condition and the anterior wedging predated the accident, and that the accident did not aggravate that condition. He further explained that the anterior wedging of this vertebra was not specifically pointed out by him when the 1961 x-rays were made because it had not progressed far enough at that time to be characterized as a wedging.
As we have already noted, the trial judge in the tort action and the trial judge in the instant suit concluded that plaintiff *766 did not sustain a disabling back injury as a result of the accident which occurred on July 23, 1961. We agree that the evidence fails to- establish that he sustained such an injury.
Our conclusion is that the evidence supports the findings of the trial court that plaintiff was disabled for a period of only 16 weeks as a result of the injuries which he sustained on the above mentioned date.
For these reasons the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.