**Wilbur G. TROYER, Claimant-Respondent,**

**v.**

**ARMOUR AND COMPANY, Employer-Appellant.**

**No. 8677.**

Springfield Court of Appeals.

Missouri.

Nov. 29, 1967.

Motion for Rehearing or to Transfer to Supreme Court Denied Dec. 28, 1967.

Milton B. Kirby, Kirby, Millsap & Lewis, Springfield, for employer-appellant.

Kenneth H. Reid, Stewart, Reid & Turner, Springfield, for claimant-respondent.

PER CURIAM.

This is a Workmen's Compensation case. Wilbur G. Troyer, to whom we shall refer as the claimant, sustained an injury arising

out of and in the course of his employment on April 10, 1961. The Industrial Commission found that he had sustained permanent and total disability, and entered an award accordingly. Both the employer and the claimant appealed to the Circuit Court of Webster County, the claimant on the ground that the attorney's fee allowed was inadequate. The circuit court modified the allowance for attorney's fee but otherwise affirmed the award. The employer does not now question the allowance of attorney's fees, but has appealed from the finding that the claimant is permanently and totally disabled.

The claimant was 45 years old at the time this appeal was argued. He has "about [a] ninth grade" education and has always done heavy physical labor. He started working for the employer in 1947 and " * * * worked for them steady except for a small period of time when they were on strike" up to the time of the accident. His medical records indicate that he had intermittent back trouble and joint pain for several years prior to his injury.

On April 10, 1961, the claimant was wheeling several heavy boxes of meat into the Farmers Exchange at Conway, Missouri. One of the boxes on top of the two-wheel cart slipped, the claimant " * * * grabbed it with my other hand and * * * put myself in a heavy strain," injuring his back. Claimant was referred to a physician who treated him in a hospital for a short time. He returned to work and worked approximately five weeks, off and on, in June, July and August of 1961. His back did not improve, and in September 1961 it was determined that he had a herniated disc at the L–5 S–1 level. Surgery was recommended.

On September 26, 1961, Mr. Troyer was operated by Dr. William H. Snead, an orthopedic surgeon. Dr. Snead removed a part of the herniated disc and attempted to fuse the lumbosacral joint with a bone graft. Mr. Troyer was hospitalized until November 8, 1961, when he was discharged wearing a plaster cast. After some initial improvement, the claimant's back pain returned and he was readmitted to the hospital on April 9, 1962, for further treatment. This treatment did not relieve the claimant's pain, and he was again discharged from the hospital on April 14, 1962. Dr. Snead continued to see the claimant at intervals but, as the doctor put it, there was "not much change in his condition."

Further X-rays were made on January 7, 1963. These revealed that a firm fusion of the lumbosacral joint had not been obtained, and Dr. Snead recommended further surgery. The employer declined to provide additional surgery on the ground that it would only increase the claimant's disability, and consequently the first of four hearings was had on this claim on August 15, 1963. The Division of Workmen's Compensation ordered the employer to furnish additional medical benefits.

On August 30, 1963, Dr. Snead operated a second time. The doctor found that there was "motion in the interspace," i. e., in the joint, and that there was a "hairline defect" in the fusion. More new bone was put in the fusion site, and a metal dowel, known as a Knowles plug, was used to detain what remained of the spinous processes and to prevent motion during claimant's recovery period. Mr. Troyer remained in the hospital until November 22, 1963, and was again discharged. However, X-rays taken February 7, 1964, revealed that the second attempt at fusion of the joint had not been successful.

A second hearing was had on July 31, 1964. Dr. Snead appeared at this hearing, gave the claimant's medical history much as we have related it, and went on to say that while there was some possibility that Mr. Troyer would improve over a period of of time, "I [don't] feel I [have] anything to offer him either medically or surgically." Dr. Snead felt that part of the claimant's disability was psychosomatic, that his pain was a "combination," and that claimant had "about 35 per cent permanent partial dis-

ability." The claimant also testified at this hearing, stating that the pain in his back and legs was such that "I imagine during the day time I am in bed at least three-fourths of the time. * * *" When he attempted to sit, Mr. Troyer had "just such a tremendous pain I can't set there." Claimant had pain in his legs, he said, but "my main trouble * * * is my back." "When I move it hurts my back." Following his last visit with Dr. Snead, claimant had gone "on his own" to another doctor, Dr. Frank D. Sundstrom, for an examination. Claimant stated positively that he wanted further surgery done, if it was indicated.

Dr. Sundstrom's deposition was introduced in evidence at this time. He had examined the claimant once, on April 16, 1964. Dr. Sundstrom testified at some length about the nature of his examination, and described a number of painful and disabling conditions which he found to exist. He believed that if the fourth lumbar joint were fused, then the "major portion of [claimant's] symptoms would also be eliminated." He also believed the claimant to be totally disabled and thought that condition would continue unless further successful surgery was performed. The doctor recommended further surgery.

The Division of Workmen's Compensation found, as a result of this hearing, that the claimant was still in need of medical care. Subsequently, in September and October 1964, Mr. Troyer was examined by Dr. Howard J. McAlhany, a neurosurgeon, and Dr. Daniel L. Yancey, an orthopedic surgeon. Dr. McAlhany's evidence revealed that he had examined the claimant a number of times, once in connection with an application for disability insurance benefits under the Social Security Act. The doctor testified that in his opinion there was still some mobility in the lumbosacral joint, that Mr. Troyer had some psychological problem or problems, that further surgery was not indicated, and that claimant had 25 per cent permanent disability of the body as a whole. Dr. McAlhany did add, however, that in May 1964 he had reported to the

Social Security Administration that claimant "[had] been rendered a low back cripple because of his multiple operations and seems much more uncomfortable now than * * * in June of 1961." Dr. Yancey also made an examination in October 1964, and he concluded that "at the present time, this man appears to be both physiologically and psychologically a cripple. * * * I believe his low back should be re-explored with the idea of refusing his spine and removing the metallic fixation. Following such a procedure a rather prolonged period of rehabilitation, both from a physiological and psychological viewpoint, will be necessary."

The employer again refused further medical benefits on the ground that additional surgery would increase claimant's disability, and a third hearing was held on February 3, 1965. The medical evidence we have just recited was received. Mr. Troyer appeared and said that he wanted further surgery, "because of the pains and all I am going through." Claimant said of his physical condition, "It has been worse. I don't know quite often lately I'm in terrible pain all over, just down my legs and up my back bone." Because of his pain, claimant said, "usually I spend most of the time in bed." Claimant was unable to work, "because it hurt to (sic) bad whenever I'm up." The Division of Workmen's Compensation ordered the employer to furnish additional medical benefits.

On March 25, 1965, Mr. Troyer again entered the hospital and was operated for a third time. This time, an attempt was made to fuse the fourth and fifth lumbar vertebrae and the sacrum. Claimant remained in the hospital until June 29, 1965, and was thereafter seen periodically by Dr. Yancey, who performed the third operation, up to December 8, 1965. However, X-rays taken on December 8, 1965, revealed that there was still demonstrable motion in the lumbosacral joint, and that the third attempt at fusion had not been successful. On December 8, 1965, according to Dr. Yancey, Mr. Troyer still had considerable pain in his back and in his knees following activity,

but was "fairly comfortable lying in bed, as long as he didn't exert himself he didn't have very much discomfort." Testifying by deposition on January 28, 1966, Dr. Yancey stated that he believed there had been some improvement in claimant's condition as a result of the third operation, and there was a possibility claimant's back would become stronger, but the doctor estimated claimant's permanent disability at "between 40 to 50 per cent * * * including all factors." Dr. Yancey believed the claimant had developed a definite anxiety neurosis, and that it contributed substantially to his disability.

A fourth and final hearing was held on this claim on February 3, 1966. At this time, the Division of Workmen's Compensation received the medical evidence we have just recited, and further heard testimony from Dr. Charles J. Ash, another orthopedic surgeon. It is sufficient for the moment to say that Dr. Ash had examined the claimant on three occasions, once after the second operation, and twice after the third. Dr. Ash was of the opinion that Mr. Troyer was totally disabled as a result of his injury, both before and after the final operation, and he did not believe the claimant would improve. The claimant also testified. He stated that he now had to use an aluminum walker to move about the house and two canes when he went outside. He could not stand, sit or stoop without extreme pain, and was unable to lift anything heavier than a book or papers. Claimant estimated that because of his disability he spent 80 to 90 per cent of his time in bed.

■ As indicated, the appellant's position in this court is that the evidence does not substantially support a finding that the claimant is totally and permanently disabled. In this connection, counsel for both parties have extensively briefed and discussed the general rules applicable to the appellate review of Workmen's Compensation cases, each claiming that one or another aspect of those rules aids his case. For the

purposes of this opinion, it is unnecessary to discuss those rules again, for the scope of our review is prescribed by the Constitution of 1945. We decide only whether the Commission could reasonably have made its finding and reached its result upon consideration of all the evidence before it, and whether its decision is contrary to the overwhelming weight of the evidence. Article V, Section 22, Constitution of 1945, V.A.M.S.; Monical v. Armour and Company, Mo., 307 S.W.2d 389.

As our statement of the background facts suggests and the briefs of the parties show, it is the sufficiency of the medical evidence which is questioned. The employer has expanded its brief somewhat on oral argument and has advanced some more or less abstract arguments which we feel have considerable merit. Regardless of their merit, however, these supplementary arguments are not determinative, and we will limit our discussion to those points which are dispositive of the appeal. Logsdon v. Duncan, Mo., 293 S.W.2d 944.

The Commission had much medical evidence before it, but primarily and on this appeal we are concerned with the testimony of three doctors, Dr. Snead, Dr. Yancey and Dr. Ash, all admittedly qualified orthopedic surgeons. Dr. Snead treated the claimant in connection with this accident from September 8, 1961, to March 20, 1964. The doctor's final medical report, based on an examination made February 14, 1966, and received in evidence by stipulation, recited that "he [Mr. Troyer] has considerable low back pain which is a residual of injury and surgical attempts at treatment. He also has a definite anxiety neurosis which contributes to his disability. In my opinion he has 50% permanent disability of the body as a whole." Dr. Yancey, in his deposition given January 28, 1966, was asked if he had rated claimant's disability. His answer was "Yes, I felt that he had between 40 to 50 per cent permanent disability, including all fac-

tors." Dr. Ash appeared at the final hearing and testified as follows:

"Q. Did you form any conclusion as to whether Mr. Troyer was disabled as of the date of your initial examination in May of 1964?

A. I felt that he was disabled at that time.

\*     \*     \*     \*     \*     \*

Q. Doctor, as a result of your three examinations of Mr. Troyer on the dates which you have mentioned did you form any opinion as to whether Mr. Troyer's condition had improved from the time of your first [examination] to the time of your last or whether it had changed in any way?

A. It is my opinion his condition had worsened somewhat.

\*     \*     \*     \*     \*     \*

Q. Did you form any conclusion as to whether Mr. Troyer was still disabled at the time of your last examination on January 25, 1966?

A. I felt *he was still totally disabled, yes, sir*. [Emphasis added.]

\*     \*     \*     \*     \*     \*

Q. Doctor, do you have an opinion as to whether Mr. Troyer's present condition is affected in any way by any anxiety reaction?

A. I believe he has a definite anxiety reaction or neurotic component as to his present condition, yes, sir.

Q. Is this unusual for you to find in your field after a medical history as I have related to you in the hypothetical question?

A. I would anticipate it.

Q. Do you have an opinion as to whether his physical condition would be expected to improve?

A. I do not believe his physical condition will improve."

\*     \*     \*     \*     \*     \*

Needless to say, the last quoted medical testimony, considered with the other facts and circumstances presented, justify the Commission's finding that the claimant is totally and permanently disabled; the further question is whether the medical evidence favorable to the award is so insubstantial that the award is contrary to the overwhelming weight of the evidence. In this respect and in particular, the employer's argument is that Dr. Ash's testimony cannot be given the same weight as that of the doctors who treated the claimant because he did not have the same opportunity to observe and evaluate the claimant's behavior. Of course, for some purposes a distinction is made between an "examining physician" and a "treating physician," Anno., 175 A.L.R. 274, 279–281, but in this case, so far as estimates of disability are concerned, the distinction is of no consequence. The cause of claimant's injury was firmly established by other evidence, Dr. Ash was testifying on the basis of personal observation and clinical and X-ray examination, and he could competently express an opinion about the terminal condition of the injury based on his own knowledge and observation. Hay v. Ham, Mo.App., 364 S.W.2d 118. Considering the whole record, we cannot confidently say the award is contrary to the overwhelming weight of the evidence. The most that can be said is that conflicting scientific opinions were expressed, all based on adequate data and observation. The Commission had a choice. Vollmar v. Board of Jewish Education, Mo., 287 S.W.2d 868; Greer v. Missouri State Highway Department, Mo.App., 362 S.W.2d 773. No question is raised here concerning the allowance of attorney's fees, but we think the trial court properly modified the award by increasing the allowance.

For the reasons indicated, the award, as modified by the circuit court, is affirmed.

All concur.