444 P.2d 595

Leon L. REIN, Virginia Ruth Rein, Alvina Rein, Vernon H. Rein and Winifred Rein, Plaintiffs-Appellants,

v.

Joseph H. DVORACEK and Wilma V. Dvoracek, Defendants-Appellees.

No. 191.

Court of Appeals of New Mexico.

Aug. 9, 1968.

Eugene E. Brockman, Tucumcari, for appellants.

Victor C. Breen, Rowley, Breen & Bowen, Tucumcari, for appellees.

OPINION

OMAN, Judge.

Plaintiffs appeal from a judgment dismissing their complaint. The theory upon which they sought recovery was apparently that of deceit, since they claimed: (1) that defendants made representations to plaintiffs concerning the nature of the construction, the rental earnings, and the operating expenses of a motel in Tucumcari, New Mexico, which plaintiffs contracted to purchase from defendants; (2) that plaintiffs relied upon the truth of these representations, and were thereby induced to enter into the contract; (3) that

the representations were false; and (4) that the plaintiffs suffered damage as a result.

We shall consider the rule of law announced in Ham v. Hart, 58 N.M. 550, 273 P.2d 748 (1954), as being the applicable law, since plaintiffs urge this upon us as being the rule under which they were proceeding. See also Tsosie v. Foundation Reserve Ins. Co., 77 N.M. 671, 427 P.2d 29 (1967) and Modisette v. Foundation Reserve Ins. Co., 77 N.M. 661, 427 P.2d 21 (1967), wherein the rule announced in Ham v. Hart, supra, was reaffirmed. This is not the same principle or rule of law upon which the plaintiff proceeded in Sauter v. St. Michael's College, 70 N.M. 380, 374 P.2d 134 (1962).

■ Even though the trial court may have erred in applying the actionable fraud rule of the Sauter case in some of the findings and conclusions, the result reached was not altered thereby, as will hereinafter be shown. A trial court will not be reversed if the result be correct, even though the result may have been based upon a wrong reason. Tsosie v. Foundation Reserve Ins. Co., supra; Jones v. Harper, 75 N.M. 557, 408 P.2d 56 (1965); Southern California Petroleum Corporation v. Royal Indemnity Co., 70 N.M. 24, 369 P.2d 407 (1962).

■ Although plaintiffs rely upon three separate points for reversal, two of which they argue together, all three points relate to claimed errors in the trial court's findings and conclusions, and the failure of that court to make certain of plaintiffs' requested findings and conclusions. The appeal must fail if there is substantial evidence to support the finding that defendants made no misrepresentation which "caused" plaintiffs to enter into the contract. Reliance upon a misrepresentation is essential to recovery under the rule announced in Ham v. Hart, supra. In addition to the opinion in that case, see also Tsosie v. Foundation Reserve Ins. Co., supra; Modisette v. Foundation Reserve Ins. Co., supra; Bennett v. Finley, 54 N.M.

139, 215 P.2d 1013 (1950); 1 Harper and James, The Law of Torts § 7.13 (1956).

One of the plaintiffs testified he relied on information contained in a written memorandum entitled "Motel Survey." This memorandum was prepared by a realtor representing defendants. There was testimony by the realtor that the information contained in this memorandum was furnished by defendants.

The two items on this "Motel Survey" here in question are: (1) a showing of gross income from room rentals for the months of March 1964, to February 1965, inclusive, totaling $20,101.75; and (2) the absence from a list of the expenses of a monthly rental charge of $50.00 or $55.00 on a neon sign. The figure representing gross income from room rentals is apparently in error in an amount in excess of $3,000.00.

However, the evidence shows the following which support the court's finding that plaintiffs did not rely on any false representation made by defendants: (1) plaintiffs were experienced motel operators; (2) plaintiffs at no time discussed with the defendants the rental income from the motel, or the fixed expenses thereon; (3) the information contained in the "Motel Survey" was conveyed to plaintiffs by a realtor who was not employed by defendants; (4) two of the plaintiffs visited the motel on at least one occasion before the contract was entered into. On this occasion they went through all the rooms in the motel. The books and records reflecting the rental income and the fixed expenses were present for examination by plaintiffs. The realtor representing defendants was present and asked plaintiffs if they wanted to see the books, and they answered, "No, it's not necessary." Plaintiffs at no time made or requested permission to make an examination of the books and records; (5) plaintiffs had asked the realtor representing defendants about the income from the motel and were told, "I wouldn't guarantee you anything on that income of the motel unless I see the tax

returns and his books"; (6) the "Motel Survey" showed the outside walls of the motel to be of brick construction, when they were not. It appears from the record that this certainly must have been known to plaintiffs. They based their complaint in part upon a claimed misrepresentation in this respect, but they offered no evidence in support of this claim; (7) plaintiffs were also represented by a realtor and he advised with and helped them in completing the transaction; (8) the written contract was entered into between the parties on September 9, 1965, and the plaintiffs entered into possession and began operation of the motel on September 15, 1965; (9) on November 4, 1965, the parties entered into a supplemental agreement. By the supplemental agreement they expressly confirmed and ratified all terms and conditions of the original contract dated September 9, 1965, except as expressly provided in the supplemental agreement. The only changes made by the supplemental agreement related to how the monthly payments were to be made and applied, and the inclusion of a forfeiture clause which did not appear in the original contract; (10) plaintiffs continued in the possession and operation of the motel from September 15, 1965, until January 15, 1967, when they turned the motel back to defendants; (11) there is nothing in the record to indicate that plaintiffs at any time claimed misrepresentations had been made upon which they relied, until the filing of their complaint on June 16, 1967.

■ In reviewing the evidence for the purpose of determining whether or not it substantially supports the findings, it must be viewed, together with all reasonable inferences deducible therefrom, in the light most favorable to support the findings, and all evidence unfavorable to the findings must be disregarded. Fox v. Doak, 78 N.M. 743, 438 P.2d 153 (1968); Nance v. Dabau, 78 N.M. 250, 430 P.2d 747 (1967); Taylor v. McBee, 78 N.M. 503, 433 P.2d 88 (Ct.App.1967). The appellate court may not properly substitute its judgment for that of the trial court as to the credibility of any witness or as to the weight to be given his testimony. Crumpacker v. Adams, 77 N.M. 633, 426 P.2d 781 (1967); Arretche v. Griego, 77 N.M. 364, 423 P.2d 407 (1967); Bell v. Kenneth P. Thompson Co., 76 N.M. 420, 415 P.2d 546 (1966). It is not for the appellate court to say what testimony should be given credence and what should be disbelieved. Ippolito v. Katz Drug Co., 199 Kan. 309, 429 P.2d 101 (1967).

■ We are of the opinion that there is substantial support in the evidence for the finding that defendants made no misrepresentation which "caused" plaintiffs to enter into the contract. This being so, the judgment for defendants was properly entered and should be affirmed.

It is so ordered.

SPIESS, C. J., and WOOD, J., concur.