480 P.2d 161

Bill H. WOOD, Plaintiff-Appellant,

v.

CITIZENS STANDARD LIFE INSUR-
ANCE COMPANY, Defend-
ant-Appellee.

No. 9106.

Supreme Court of New Mexico.

Jan. 25, 1971.

L. George Schubert, Hobbs, for plaintiff-appellant.

Heidel, Swarthout & Samberson, Lovington, for defendant-appellee.

## OPINION

OMAN, Justice.

Plaintiff appeals from an adverse judgment in his suit for bodily injury allegedly covered under a policy of insurance issued by defendant. We affirm.

His claim was that his bodily injury came within the policy coverage of "* * * loss resulting directly, independently and exclusively of all other causes from bodily injuries effected solely through external and accidental means * * *." His suit on this claim was tried with his suit for workmen's compensation benefits to which he claimed to be entitled by reason of the same injury. The same evidence was adduced in support of both claims.

Through inadvertence a formal order consolidating the two cases was never entered. Thus, plaintiff appealed to the New Mexico Court of Appeals from the judgment entered in the workmen's compensation suit, which was also adverse to him. That judgment was affirmed. Wood v. Gandy, 82 N.M. 201, 477 P.2d 1016 (Ct. App.), decided December 4, 1970.

Plaintiff's contention is that he was overcome by a toxic gas, to wit, hydrogen sulfide, while preparing and placing a hot oil unit for the purpose of circulating chemically treated hot water through a tank containing crude oil and brine water. He claims he suffered labyrinthitis as a proximate result of being exposed to this gas.

His first point relied upon for reversal, as in Wood v. Gandy, supra, is that "THE TRIAL COURT ERRED IN NOT PERMITTING A CHEMIST TO TESTIFY AS TO THE EFFECTS OF HYDROGEN SULFIDE ON THE HUMAN SYSTEM. * * *" and in applying "THE WRONG STANDARDS IN REJECTING THE TESTIMONY OF THE CHEMIST." The qualifications of this witness, as developed by his testimony, are that he has a bachelor's degree in Chemical Engineering; has taken "* * * a nine weeks' management course * * *"; has specialized in designing and managing chemical plants; and is Vice President of a chemical company. He did testify that from his experience he knew hydrogen sulfide would be one of the gases emitted by the heating of the crude oil, and he was permitted to testify that hydrogen sulfide is toxic and extremely hazardous and dangerous.

The court sustained an objection to a question in which the witness was asked: "* * * from your experience with hydrogen sulfide what concentration of hydrogen sulfide would you say is required to put the plaintiff in the physical condition he found himself?" The court, in announcing a reason for its ruling, stated in part: "* * * For him to say what it [hydrogen sulfide] is going to do to a human body, I don't see that you have qualified him."

The plaintiff made no effort to further qualify the witness and made no tender of proof. A proper tender or offer of proof is essential to the preservation of error in improperly excluding evidence. Williams v. Yellow Checker Cab Co., 77

N.M. 747, 427 P.2d 261 (1967); Falkner v. Martin, 74 N.M. 159, 391 P.2d 660 (1964). However, as already stated, the witness had testified that hydrogen sulfide was toxic and extremely hazardous and dangerous. Plaintiff had fully described the physical condition in which he found himself. The treating physician testified the gas was toxic to the human body in a low concentration, and, he thought, it was toxic in concentration as low as "* * * four parts per thousand." No effort was made to establish the concentration of the gas at the place and time plaintiff claims to have been overcome. Thus, as stated in Wood v. Gandy, supra, plaintiff could not have been prejudiced by the court's refusal to permit the witness to answer the question asked of him.

■ Further, the trial court was not in error in sustaining the objection on the basis of the lack of the witness' qualifications to give his opinion as to the effects of the gas on the human body. The qualifications of this witness to give such an opinion are not comparable to the qualifications of the non-medical witnesses who were permitted to testify in Roberts v. United States, 316 F.2d 489 (3d Cir. 1963) and Stertz v. Briscoe, 184 Kan. 163, 334 P.2d 357, 70 A.L.R.2d 1021 (1959), upon which plaintiff relies.

■ The trial court has wide discretion in determining whether one offered as an expert witness is competent or qualified to give an opinion on any given subject or proposition, and the court's determination of this question will not be disturbed on appeal, unless there has been an abuse of this discretion. Jaramillo v. Anaconda Company, 71 N.M. 161, 376 P.2d 954 (1962); Transwestern Pipe Line Company v. Yandell, 69 N.M. 448, 367 P.2d 938 (1961); Sturgeon v. Clark, 69 N.M. 132, 364 P.2d 757 (1961); 2 Jones on Evidence, § 414 (5th Ed. 1958). The ruling of the trial court here was clearly not an abuse of this discretion.

Plaintiff next complains the trial court erred in accepting the diagnosis of plaintiff's condition made by a medical doctor, who had examined plaintiff only once at the request of defendants, rather than accepting the diagnosis of the treating osteopathic physician, who had treated plaintiff on seventeen occasions. Plaintiff asserts: "The only inference that can be drawn is that the trial court intentionally disregarded the opinion of the osteopath because of a bias against his school of practice." We disagree. No such inference of bias can properly be drawn from the trial court's finding: "That as a reasonable medical probability, the disability of which plaintiff complains is a result of a stroke (i. e., a cerebral vascular accident) due to pre-existing hypertension."

■ No direct attack has been made on this finding. Unless findings are directly attacked, they are the facts in this court. Morris v. Merchant, 77 N.M. 411, 423 P.2d 606 (1967). However, in view of the nature of plaintiff's contentions under this point, we shall discuss them in some detail.

The osteopathic physician, after testifying that in his opinion plaintiff suffered from toxic labyrinthitis, was asked the following question by plaintiff's attorney to which he made the following answer:

"Q. Do you have an opinion based upon reasonable medical certainty that the physical condition of the plaintiff as found by you was probably caused by the accident he described to you—

"* * *

"A. Yes."

It is impossible to definitely tell from the answer whether the defendant was stating that in his opinion the labyrinthitis was caused by the claimed inhalation of gas, or merely that he had an opinion. The matter of the osteopathic physician's opinion as to the causal relationship between the diagnosed labyrinthitis and the claimed inhalation of gas by plaintiff was explored no further. However, a fair evaluation of the substance of his entire testimony, as it relates to the question at hand, may be that in his opinion the condition of labyrinthitis, which he diagnosed, was

probably caused by plaintiff's inhalation of gas.

A medical doctor called as a witness by plaintiff, who had examined plaintiff on eleven occasions, testified as follows as to his diagnosis of plaintiff's condition in response to questions asked by plaintiff's attorney:

"Q. Did you arrive at a diagnosis regarding his condition, as related to the toxic gas he may have inhaled?

"A. It was my impression that this patient had hypertension, and was being treated, and that he had a toxic labyrinthitis, most likely associated with sinusitis, and toxic reaction from exposure to the gas.

" * * *.

"Q. Assume, Doctor Smith, that Mr. Wood had inhaled this toxic gas for a prolonged period of time, as he related to you, is that—does that aggravate his hypertension, or in any way related to disability as to the hypertension?

"A. I don't know when his hypertension began. I don't know for sure what kind of gas he was in. So, I could not give a real good answer as to what influence the gas would have upon hypertension, from what I know of it at the present.

" * * *.

"Q. Assuming that the patient's statement to you was true regarding inhalation of a toxic gas as you related in the history you obtained from him, do you have an opinion based on a reasonable medical certainty that he is disabled as a result of that accidental injury?

"A. I cannot state specifically that I know that this is from the gas. There are certain toxic reactions that could occur with certain gases that could produce labyrinth damage, but, I am not qualified to make a specific statement on this at this time."

The only other doctor who testified did so as a defense witness, and it was the claimed acceptance by the trial court of this doctor's diagnosis of which plaintiff now complains. His testimony as to his diagnosis is set forth in the opinion in Wood v. Gandy, supra; and he clearly gave it as his opinion that plaintiff had suffered a cerebral vascular accident, or stroke, as a result of his hypertension.

It was for the trial court, as the trier of the facts, and not for this court, to determine the credibility of the witnesses, the weight to be given their respective testimonies, and wherein the truth lay. Rutledge v. Johnson, 81 N.M. 217, 465 P.2d 274 (1970); Gallegos v. Wilkerson, 79 N.M. 549, 445 P.2d 970 (1968); Wood v. Gandy, supra; Rein v. Dvoracek, 79 N.M. 410, 444 P.2d 595 (Ct.App.1968). The fact that the witnesses upon whose credibility the trial court was required to pass were medical experts, and that the differences and conflicts to be resolved arose out of their medical opinions as to the causes and nature of plaintiff's disabling condition, does not alter the rule. Gallegos v. Kennedy, 79 N.M. 590, 446 P.2d 642 (1968); Renfro v. San Juan Hospital, Inc., 75 N.M. 235, 403 P.2d 681 (1965); Montano v. Montoya-Saavedra, 70 N.M. 332, 373 P.2d 824 (1962); Wood v. Gandy, supra.

However, plaintiff urges our adoption of " * * * the rule that more weight be given the testimony of the treating physician than the examining physician * * *." As we understand his position, he is urging that we adopt a rule requiring the trier of the facts, as a matter of law, to give greater weight to the expert medical opinions of treating physicians than to expert medical opinions of physicians who have conducted only medical examinations for purposes of evaluation, regardless of the respective qualifications of the physicians, the nature and extent of the treatment, and the nature and extent of the evaluation examinations, and regardless of all other circumstances which might be developed bearing upon the credibility of the physicians and the weight to be given their respective opinions. He relies upon the cases of Rezza v. Cziffer, 186 So.2d

174 (La.App.1966); Stuart v. Anheuser-Busch Company, 185 So.2d 333 (La.App. 1966) and Troyer v. Armour and Company, 423 S.W.2d 58 (Mo.App.1967).

In the Stuart case it is stated: "The testimony of a physician who examines and treats the injured party is entitled to much greater weight than a physician examining the plaintiff at a later date * *."

 This language would indicate support for a rule of evidence such as plaintiff urges upon us. The language used in the Rezza and Troyer cases at most lends very doubtful support for such a rule. In any event, this is not the rule in New Mexico, and we are not prompted by plaintiff's urgings to adopt such a rule. Once a medical witness has qualified to give an expert medical opinion upon a particular issue, the weight, if any, to be given his opinion on this issue, and the resolution of conflicts between his opinion and the opinions of other medical experts on the issue, are for the trier of the facts. Gallegos v. Kennedy, supra; Renfro v. San Juan Hospital, Inc., supra; Montano v. Montoya-Saavedra, supra; Wood v. Gandy, supra. See also Sawyer v. Washington National Insurance Company, 78 N.M. 201, 429 P.2d 901 (1967); Frederick v. Younger Van Lines, 74 N.M. 320, 393 P.2d 438 (1964); Reid v. Brown, 56 N.M. 65, 240 P.2d 213 (1952).

Plaintiff's final point is that the trial court erred in finding "* * * PLAINTIFF'S DISABILITY WAS NOT CAUSED BY OR THE RESULT OF ANY BODILY INJURIES EFFECTED THROUGH ANY EXTERNAL AND ACCIDENTAL MEANS." His position under this point is predicated upon his assumption that his disability resulted from his inhalation of hydrogen sulfide gas. As stated above, the trial court found: "That as a reasonable medical probability, the disability of which plaintiff complains is a result of a stroke (i. e., a cerebral vascular accident) due to pre-existing hypertension."

As already stated, this finding has not been directly attacked, and the only indirect attack is as discussed above and rejected. Therefore, there being no causal connection between the claimed inhalation of hydrogen sulfide gas and plaintiff's disability, the court did not err in finding plaintiff's disability "* * * was not caused by, and is not the result of, any bodily injuries effected through any external and accidental means."

The judgment should be affirmed.

It is so ordered.

COMPTON, C. J., and STEPHENSON, J., concur.