This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-36393**

**ALEJANDRO and MARIA LERMA,**
**Individually and as Personal**
**Representative of the ESTATE OF**
**SERGIO LERMA, Deceased, and as**
**Parents and Next Friends of EDUARDO**
**LERMA, ALEJANDRO LERMA, JR.,**
**and RUBY LERMA, all Minors,**

      Plaintiffs-Appellants,

v.

**BCA MEDICAL ASSOCIATES, a**
**Professional Association; WILLIAM G.**
**LIAKOS, JR., M.D.; LORI D. ZINK,**
**M.D.; and MARGARITA MACIAS,**
**M.D.,**

      Defendants-Appellees,

and

**ROSWELL HOSPITAL CORPORATION**
**d/b/a EASTERN NEW MEXICO MEDICAL**
**CENTER; ONLINE RADIOLOGY MEDICAL**
**GROUP, INC., a Foreign Corporation; and**
**JOHNNY BLIZNAK, M.D.,**

      Defendants.

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**William G. W. Shoobridge, District Judge**

Marion J. Craig III Attorney at Law, LLC
Marion J. Craig III
Roswell, NM

Adam D. Rafkin P.C.
Adam Daniel Rafkin
Ruidoso, NM

Andrew M. Gross, M.D., J.D., P.C.
Andrew M. Gross
Dallas, TX

for Appellants

Atwood, Malone, Turner & Sabin, P.A.
Lee M. Rogers
Carla Neusch Williams
Roswell, NM

Lorenz Law
Alice T. Lorenz
Albuquerque, NM

for Appellees BCA Medical Associates, P.A. and Margarita Macias, M.D.

**MEMORANDUM OPINION**

**M. ZAMORA, Chief Judge.**

**{1}** Following a five-day trial, the jury returned verdicts in favor of Defendants BCA Medical Associates, Dr. William G. Liakos, Dr. Lori D. Zink, and Dr. Margarita Macias, and judgment was entered accordingly. Plaintiffs raise three issues on appeal in support of a new trial. First, they assert that the district court abused its discretion by allowing hearsay statements regarding the standard of care into evidence. Second, Plaintiffs contend that the district court abused its discretion by rejecting their tendered jury instructions on duty to inform, arguing that the issue was tried by implicit consent. Third, Plaintiffs argue that the district court erred by granting summary judgment for Defendants on the loss of consortium claim brought on behalf of Sergio's twin brother. Unpersuaded, we affirm.

**BACKGROUND**

**{2}** Sergio was brought to BCA Medical Associates, a pediatric healthcare provider in Roswell, New Mexico, complaining of an ear infection. Despite momentary improvements in his condition, Sergio was brought back to BCA vomiting and running a fever. When his condition did not improve, he was admitted to Eastern New Mexico Medical Center (ENMMC).

**{3}** After spending the night in the hospital, Sergio was found unresponsive. Dr. Macias conducted an examination of Sergio and ordered CT scans of his head and

abdomen. Dr. Macias believed that the likely cause of Sergio's condition could be from bleeding on the brain or an infectious process like meningitis. Despite her concern that she was dealing with meningitis, Dr. Macias decided to withhold antibiotics until she could perform a lumbar puncture—a procedure to extract a sample of a patient's spinal fluid, also called a spinal tap.

**{4}** The CT scan of Sergio's head indicated the possibility of fluid on the brain, a condition ENMMC was not equipped to treat. Radiologist Dr. Johnny Blizak warned Dr. Macias that a lumbar puncture was not recommended until the fluid could be drained and the pressure in the cranium could be relieved. Dr. Macias decided not to perform a lumbar puncture based on the report of the heightened increase of cranial pressure and arranged for Sergio to be transferred to University of New Mexico Hospital (UNMH). At UNMH, doctors drained the fluid from Sergio's skull and then performed a lumbar puncture. Following the lumbar puncture, doctors administered antibiotics and Sergio's condition began to improve. Shortly thereafter, Sergio's condition again began to deteriorate and he died.

**{5}** Plaintiffs brought suit for wrongful death arising from the alleged negligence of BCA Medical Associates, ENMMC, the attending physicians, Dr. Liakos, Dr. Zink, and Dr. Macias, the radiologist, Dr. Johnny Blizak, and his employer Online Radiology Inc.[1] Plaintiffs also brought derivative loss of consortium claims in their own right and on behalf of Sergio's siblings.

**{6}** The jury returned a verdict in favor of Defendants, finding no negligence on the part of Dr. Liakos and Dr. Macias, and finding negligence on the part of Dr. Zink, but no causation. The district court entered judgment consistent with the jury's verdict, dismissing all claims against BCA Medical Associates, Dr. Liakos, Dr. Macias, and Dr. Zink with prejudice. This appeal followed.

**{7}** Because this is a memorandum opinion and the parties are familiar with the facts and procedural history of the case, we reserve further discussion of pertinent facts to our discussion section.

**DISCUSSION**

**I.      Dr. Macias's Alleged Hearsay and Standard of Care Testimony**

**{8}** Plaintiffs called Dr. Macias to testify in their case in chief. On cross-examination by her own counsel, Dr. Macias explained that she was trained to obtain a spinal fluid sample before administering antibiotics to a meningitis patient and that administering antibiotics prior to obtaining a spinal fluid sample might interfere with the results and diagnosis because the antibiotics could clear out some of the organisms that were growing in the fluid.

---

1Prior to trial, Plaintiffs reached settlements with ENMMC, Dr. Blizak, and Online Radiology, Inc.

**{9}** Dr. Macias testified that her training in the Philippines and in Chicago during her residency programs taught her to obtain a sample before administering antibiotics. The following exchange then occurred:

> [Defense counsel]: And do you remember specifically ever getting training about that in a specific instance where you are treating a specific patient?
>
> [Dr. Macias]: Yes.
>
> [Defense counsel]: Tell us about that.
>
> [Dr. Macias]: His name was Dr. Roy. He was the chief of pediatrics then. Every morning whenever we had admissions, we would discuss every patient admitted. And he would thoroughly scold us if we had given antibiotics before.
>
> [Plaintiffs' counsel]: Objection. Hearsay.
>
> [District court]: Sustained.

Plaintiffs asked to approach the bench and the following discussion took place:

> [Defense counsel]: What she was trained is not offered for the truth of the matter asserted. It's offered to show the jury what she was trained[,] no different than if she had studied in a textbook or had had been advised in a classroom setting. But this is how she was taught. And there is no way to get that in other than what her teacher taught her.
>
> [Plaintiffs' counsel]: There is no way to get it in because its hearsay. . . . But if it was in a textbook, of course then it's an exception under the hearsay rule. But this is being offered to show the jury this is how she was told to do it and that's the right way to do it. And we can't examine that person of course.
>
> [Defense counsel]: I mean, if he were commenting on what she did in this particular case, that would be a problem. But the question is, "How were you trained? What were you told?"
>
> [District court]: Okay.
>
> [Defense counsel]: It's not offered for the truth. If he's right or if he's wrong is not the question. The question is what were you trained?
>
> [District court]: Okay.

The bench conference concluded, and the district court then instructed the jury as follows:

> Ladies and gentlemen, I'm going to allow the answer to come in for the limited purpose of identifying how the doctor was trained not for the truth of the matter asserted and not for the standard of care but simply as a statement of how she was trained.

Plaintiffs did not move for a mistrial.

**{10}** Defense counsel then elicited testimony from Dr. Macias about a specific incident during her residency in which she performed a lumbar puncture on a child and then administered antibiotics after a junior resident was unsuccessful in performing the lumbar puncture. Dr. Macias testified that the following morning the junior resident discussed the difficulty of the procedure on the child during "the usual report for those on-call" at which time Plaintiffs objected, asserting that the testimony was hearsay and went beyond the district court's ruling. The district court sustained the objection. The following exchange then occurred:

> [Defense counsel]: Okay. Just tell us the end of the report then.
>
> [Dr. Macias]: The end was he was very, very pleased and relieved that I had done as I was trained.
>
> [Defense counsel]: Who was pleased? Dr. Roy?
>
> [Dr. Macias]: Dr. Roy.

Plaintiffs did not object.

**{11}** Following the jury's verdicts, Plaintiffs moved for a new trial, arguing among other things, that Dr. Macias's testimony regarding her training from Dr. Roy constituted the "use of an undisclosed expert to establish the standard of care." The district court denied the motion.

**{12}** On appeal, Plaintiffs argue the district court abused its discretion by permitting Dr. Macias to present hearsay testimony that the chief of pediatrics, Dr. Roy, "would have scolded [Dr. Macias] for administering antibiotics under the same circumstances as in this case." This, in turn they argue, amounted to impermissible standard of care evidence from Dr. Macias, who was never disclosed as an expert, as to how a pediatrician is to treat a suspected case of meningitis. Plaintiffs further contend that the testimony in which Dr. Roy was "very, very pleased and relieved" that Dr. Macias had done as she was trained when she withheld the antibiotics until a lumbar puncture could be performed was impermissible hearsay. Plaintiffs also argue that Dr. Macias was judicially estopped from offering standard of care testimony through Dr. Roy because

she previously had stated that she could not be required in her deposition to provide standard of care testimony.

## A. Standard of Review[2]

**{13}** We review the admission of evidence for an abuse of discretion. *Tartaglia v. Hodges*, 2000-NMCA-080, ¶ 27, 129 N.M. 497, 10 P.3d 176. "Admission or exclusion of evidence is a matter within the discretion of the [district] court and the court's determination will not be disturbed on appeal in the absence of a clear abuse of that discretion." *Coates v. Wal-Mart Stores, Inc.*, 1999-NMSC-013, ¶ 36, 127 N.M. 47, 976 P.2d 999 (internal quotation marks and citation omitted). "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *Id.* (internal quotation marks and citation omitted). "[A]n abuse of discretion will be found only if we can characterize the district court's ruling as clearly untenable or not justified by reason." *Kilgore v. Fuji Heavy Indus.*, 2009-NMCA-078, ¶ 39, 146 N.M. 698, 213 P.3d 1127 (internal quotation marks and citation omitted). "We do not find an abuse of discretion unless the court's ruling exceeds the bounds of all reason or is arbitrary, fanciful or unreasonable." *Id.* (internal quotation marks and citation omitted). "If evidence is erroneously admitted or excluded, the complaining party must show prejudice to obtain a reversal." *Id.*

## B. The District Court Did Not Abuse Its Discretion

**{14}** "Hearsay" is a "statement that (1) the declarant does not make while testifying at the current trial or hearing, and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Rule 11-801(C) NMRA. "The professional standard of care generally must be established by expert testimony." *Oakey v. May Maple Pharmacy, Inc.*, 2017-NMCA-054, ¶ 25, 399 P.3d 939; *see* UJI 13-1101 (instructing that the only way to decide whether a health care provider met the professional standard is from expert witnesses).

**{15}** We assume without deciding that Dr. Macias's testimony that Dr. Roy would scold her was improper, but conclude that any error is not reversible because the curative instruction ameliorated any potential prejudice. "There is a presumption that the jury understood and complied with the court's instructions." *See Jolley v. Energen Res. Corp.*, 2008-NMCA-164, ¶ 28, 145 N.M. 350, 198 P.3d 376 (internal quotation marks and citation omitted). As noted earlier, the district court sustained Plaintiffs' objection to the testimony and instructed the jury not to consider it for the truth of the matter or standard of care evidence. We presume the jury followed, understood, and complied with the court's instructions to rely on Dr. Macias's statements for the limited purpose of

2Plaintiffs attached the denial of their motion for a new trial to their notice of appeal but explicitly state in their reply brief: "[Plaintiffs] never claimed the [district] court somehow committed error by denying the [m]otion for [n]ew [t]rial." Accordingly, this section of the opinion only reviews the evidentiary ruling at trial even though the ultimate requested relief is for a new trial which applies the same standard of review. *See State v. Mann*, 2002-NMSC-001, ¶ 17, 131 N.M. 459, 39 P.3d 124 ("[The appellate courts] will not overturn a [district] court's denial of a motion for a new trial unless the trial court abused its discretion.").

how she was trained. *See Vigil v. Miners Colfax Med. Ctr.*, 1994-NMCA-054, ¶ 22, 117 N.M. 665, 875 P.2d 1096 ("There is a presumption that the jury understood and complied with the court's instructions."). "It has long been the rule in this jurisdiction that unless it is clear that prejudice resulted because of evidence erroneously admitted, striking or instructing the jury to disregard it will cure the error and avoid reversal." *Apodaca v. Miller*, 1968-NMSC-086, ¶ 21, 79 N.M. 160, 441 P.2d 200. To the extent Plaintiffs argue that this improper testimony was the only evidence that Dr. Macias met the standard of care and was therefore prejudicial, we disagree. Defendant's expert witness, Dr. Handal, testified to essentially two different avenues for the standard of care. First, he testified that, although he believed that antibiotics should have been given before Sergio left Roswell, he did not believe that starting antibiotics at that time would have changed the overall outcome of Sergio's health. However, Dr. Handal also testified that he would not have done as Dr. Macias did in this case by waiting five and a half hours to administer antibiotics when meningitis is suspected. Plaintiff's expert also testified on the standard of care that if the lumbar puncture can be performed within a reasonable period of time "then it [is] okay to hold antibiotics[.]" The question of credibility of witnesses is for the jury to decide, and this Court does not reweigh the evidence or reassess credibility on appeal. *See Las Cruces Prof'l Fire Fighters v. City of Las Cruces*, 1997-NMCA-044, ¶ 12, 123 N.M. 329, 940 P.2d 177 (stating that "we will not reweigh the evidence nor substitute our judgment for that of the fact[-]finder"); *see also State v. Salas*, 1999-NMCA-099, ¶ 13, 127 N.M. 686, 986 P.2d 482 (recognizing that it is for the fact-finder to resolve any conflict in the testimony of the witnesses and to determine where the weight and credibility lie); *see, e.g.*, *Wood v. Citizens Standard Life Ins. Co.*, 1971-NMSC-011, ¶¶ 16, 19, 82 N.M. 271, 480 P.2d 161 (holding that the trier of facts determines weight and credibility even where the conflicting testimony was given by qualified medical experts). Based on the curative instruction given and the minimally prejudicial effect of the statements in light of the evidence already before the jury, we conclude that the district court properly exercised its discretion. *See Jolley*, 2008-NMCA-164, ¶ 27 ("The trial judge is in a much better position [than we are on appeal] to know whether a miscarriage of justice has taken place and his opinion is entitled to great weight in the absence of a clearly erroneous decision." (alteration in original) (internal quotation marks and citation omitted)).

**{16}** Plaintiffs argue that this case is analogous to *State v. Armijo*, 2014-NMCA-013, 316 P.3d 902, where the prosecution in a criminal case intentionally elicited inadmissible testimony. In *Armijo*, the testifying officer, who was not qualified as an expert, testified to his assessment of the defendant's breath alcohol content results. *Id.* ¶¶ 5-7. This Court explained that generally, the prompt admonition from the district court to the jury to disregard and not consider the inadmissible evidence would sufficiently cure any prejudicial effect; however, the general rule does not apply where inadmissible testimony is intentionally elicited by the prosecution. *Id.* ¶ 9. We held that because the state drew repeated objections to questions that were "intended to elicit [the officer's] unqualified and inadmissible opinion" about the defendant's blood alcohol content, the curative instruction was not presumed effective. *Id.* ¶ 12.

**{17}** Here, Plaintiffs contend that defense counsel intentionally elicited the testimony about Dr. Roy's purported teachings and statements, and thus the curative instruction, like *Armijo*, also cannot be presumed effective. Plaintiffs have provided no evidence to support their contention that the testimony was intentionally elicited, other than their conclusory statements, and we will not scour the record to determine whether any such support exists. *See Muse v. Muse*, 2009-NMCA-003, ¶ 42, 145 N.M. 451, 200 P.3d 104 ("We are not obligated to search the record on a party's behalf to locate support for propositions a party advances or representations of counsel as to what occurred in the proceedings."); *id.* ¶ 51 ("The mere assertions and arguments of counsel are not evidence.").

**{18}** We also do not find *Armijo* persuasive. In their reply, Plaintiffs state that "[Plaintiffs] have shown that [Dr. Macias], through her counsel, intentionally raised the issue during his examination of Dr. Macias and pursued it. "That is all that *Armijo* appears to require, as *Armijo* focuses on which party elicited the testimony. If the opposing party intentionally elicited the hearsay testimony . . . then the presumption that a curative instruction is sufficient no longer applies." It would be a big leap for us to conclude that it was intentional where Plaintiffs do not cite any evidence to support the intentionality.

**{19}** This case is a civil matter in which Plaintiffs contend the defense counsel elicited the testimony. Plaintiffs have not cited any authority extending this holding outside the context of criminal law and to circumstances where civil defense counsel elicited the purportedly impermissible testimony. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists."); *Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701 ("This Court has no duty to review an argument that is not adequately developed."); *see also Dominguez v. State*, 2015-NMSC-014, ¶ 16, 348 P.3d 183 (recognizing "the general rule is that cases are not authority for propositions not considered" (alteration, internal quotation marks, and citation omitted)). Therefore, because the district court instructed the jury not to consider Dr. Macias's testimony that Dr. Roy would scold her for the truth of the matter or for standard of care evidence, and no exception to our presumption that the limiting instruction cures the prejudice applies, we cannot say that this error is reversible.

**{20}** Because Plaintiffs did not object at trial that Dr. Macias's testimony regarding Dr. Roy being "very, very pleased and relieved" when Dr. Macias during her residency withheld the antibiotics until a lumbar puncture could be performed was also improper hearsay, this argument was not preserved. *See Gonzales v. Shaw*, 2018-NMCA-059, ¶ 14, 428 P.3d 280 ("In order to preserve an issue for review, a party must have made a timely and specific objection that apprised the district court of the nature of the claimed error and that allows the district court to make an intelligent ruling thereon." (internal quotation marks and citation omitted)); *see also State v. Pacheco*, 2007-NMSC-009, ¶¶ 7-8, 141 N.M. 340, 155 P.3d 745 (concluding a defendant did not preserve an issue when he failed to object but raised the issue in a motion for a new trial). Appellate courts may review unpreserved evidentiary issues for plain error. *State v. Montoya*, 2015-

NMSC-010, ¶ 46, 345 P.3d 1056. However, Plaintiffs do not ask us to review for plain error. *See State v. Gutierrez*, 2003-NMCA-077, ¶ 9, 133 N.M. 797, 70 P.3d 787 (explaining that we "normally refuse to step into" fundamental error or plain error review "when not invited by the appellant to do so").

**{21}** Finally, Plaintiffs contend that Dr. Macias was judicially estopped from testifying about her training from Dr. Roy because Dr. Macias refused to discuss the standard of care in depositions. However, Plaintiffs have not directed us to, and our review has not revealed, where in the record they preserved this argument for appellate review. "[O]n appeal, the party must specifically point out where, in the record, the party invoked the court's ruling on the issue. Absent that citation to the record or any obvious preservation, we will not consider the issue." *Crutchfield v. N.M. Dep't of Taxation & Revenue*, 2005-NMCA-022, ¶ 14, 137 N.M. 26, 106 P.3d 1273; *see* Rule 12-321(A) NMRA ("To preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked."); *Vill. of Angel Fire v. Bd. of Cty. Comm'rs of Colfax Cty.*, 2010-NMCA-038, ¶ 15, 148 N.M. 804, 242 P.3d 371 ("In order to properly preserve an issue, it must appear that the party fairly invoked a ruling of the district court *on the same grounds* argued in the appellate court." (emphasis added) (alterations, internal quotation marks, and citation omitted)). We conclude that the district court did not abuse its discretion by allowing Dr. Macias's testimony with a curative instruction.

## II.    Jury Instructions

**{22}** After the evidence was presented, Plaintiffs requested the district court submit to the jury, instructions adding a claim of a doctor's duty to inform. *See* UJI 13-1104B NMRA; UJI 13-1104C NMRA; UJI 13-1116B NMRA. The district court refused the instructions. Plaintiffs argue that the district court abused its discretion by refusing to give their requested jury instructions. They concede that they did not plead the issue of duty to inform in their complaint, but contend that it was tried by implicit consent of the parties.

### A.    Standard of Review

**{23}** We review the denial of a proffered instruction de novo. *See Collins v. St. Vincent Hosp., Inc.*, 2018-NMCA-027, ¶ 21, 415 P.3d 1012. "If a legal theory is supported by the evidence, a party is entitled to have the jury instructed on that theory." *Akins v. United Steelworkers of Am.*, 2009-NMCA-051, ¶ 42, 146 N.M. 237, 208 P.3d 457. However, "[a]n instruction is proper only if [the] plaintiff pleads the theory or it is tried by express or implied consent." *Rice v. Gideon*, 1974-NMCA-050, ¶ 3, 86 N.M. 560, 525 P.2d 920. "A civil case will not be reversed due to error in jury instructions unless the result is fundamentally unjust." *Salopek v. Friedman*, 2013-NMCA-087, ¶ 16, 308 P.3d 139 (internal quotation marks and citation omitted).

### B.    The District Court Did Not Err by Refusing Plaintiffs' Tendered Jury Instructions

**{24}**  "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Rule 1-015(B) NMRA. "Implied consent usually is found where one party raises an issue material to the other party's case, or where evidence is introduced without objection. However, consent cannot be implied where the evidence introduced is relevant to some other issue and the parties do not squarely recognize it as an issue in the trial." *Rice*, 1974-NMCA-050, ¶ 4 (citation omitted); *see Apodaca v. AAA Gas Co.*, 2003-NMCA-085, ¶ 73, 134 N.M. 77, 73 P.3d 215 ("Implied consent to a new theory is generally absent when the evidence is relevant to other pleaded issues.").

**{25}**  To find Dr. Macias negligent, the jury was instructed as follows:

> In this case Plaintiffs seek compensation from Dr. Macias for damages Plaintiffs say were caused by negligence.
>
> To establish negligence on the part of Defendant Macias, the Plaintiffs have the burden of proving each of the following[:]
>
> 1.      Defendant Macias had a duty to act within the standard of care in caring for Sergio Lerma;
>
> 2.      The standard of care required that Defendant Macias consider meningitis as a cause of Sergio's illness, and/or perform a lumbar puncture or spinal tap to determine if he had meningitis, and/or provide medication to Sergio for his meningitis, and/or advise University of New Mexico Hospital physicians, who had agreed to accept a transfer of Sergio, that Sergio likely had meningitis;
>
> 3.      Defendant Macias committed breach of that duty; and
>
> 4.      That as a result of Defendant Macias's negligence, Sergio suffered harm.

Further, the jury was instructed: "An act or omission is a 'cause' of injury if it contributes to bringing about the injury, and if the injury would not have occurred without it."

**{26}**  During trial, Plaintiffs questioned Dr. Macias on whether she informed Sergio's parents of her diagnosis and treatment of Sergio. In his closing statement, counsel for Plaintiffs focused on Dr. Macias's alleged failure to tell the air ambulance crew or the doctors at UNMH of the possibility of meningitis. Plaintiffs argued that Dr. Macias's failure to inform Sergio's parents that she suspected meningitis and failure to administer antibiotics earlier amounted to "unforgivable" negligence.

**{27}**  The record further reveals that outside the jurors' presence, Defendants objected to presenting the jurors portions of the videotaped testimony of Defendant's expert witness, Dr. Handal, in which Plaintiffs questioned Dr. Handal about informed consent.

Defendants argued because Plaintiffs had not pled informed consent, the testimony was irrelevant. Plaintiffs responded that Defendants did not object to their examination of Dr. Macias on whether she should have told the parents, what she did not tell the parents, and whether she wished she had told the parents about the possibility of meningitis and, as such, the subject was at issue. The district court responded that it was inclined to allow the testimony but that it did not mean it would allow an instruction on informed consent. Plaintiffs replied:

> Well, we have jury instructions. There [are] a few in dispute. Some which involve that. *Not as a separate cause of action,* but it simply instructs the jury what the law is for instance just as it would with respect to what duty a specialist has. Obviously not something that's in front of the court now.

(Emphasis added.) The district court overruled Defendants objection, and Dr. Handel's recorded testimony was played for the jury.

**{28}** Under Plaintiffs' theory of the case, Dr. Macias's alleged failure to inform Sergio's parents, the air ambulance crew, and the doctors at UNMH that she suspected meningitis could have been relevant to the jury's deliberations on negligence. Moreover, Plaintiffs admitted that the testimony regarding Dr. Handal's expert testimony about informed consent would not serve as a basis as a separate cause of action of duty to inform. "[C]onsent cannot be implied where the evidence introduced is relevant to some other issue and the parties do not squarely recognize it as an issue in the trial." *Rice*, 1974-NMCA-050, ¶ 4. As such, we reject Plaintiffs' contention that a claim of failure to inform was tried by consent of the parties and conclude that the district court did not abuse its discretion by refusing Plaintiffs' tendered jury instructions on duty to inform. *See Gonzales v. Surgidev Corp.*, 1995-NMSC-036, ¶ 20, 120 N.M. 133, 899 P.2d 576 (holding that the district court did not abuse its discretion when the evidence identified was relevant to both a pled and an unpled issue and the district court refused to instruct on the unpled issue).

### III.     Loss of Consortium

**{29}** Plaintiffs' loss of consortium claim was derivative of their negligence claims, without which the loss of consortium action is without basis. *See Fitzjerrell v. City of Gallup ex rel. Gallup Police Dep't*, 2003-NMCA-125, ¶ 12, 134 N.M. 492, 79 P.3d 836 ("Loss of consortium is thus derivative of other injuries and not an injury in and of itself."). Because we affirm the district court on Plaintiffs' first two claims of error, we do not address their loss of consortium argument, as we cannot remand the claim to the district court for further proceedings without a primary claim of injury onto which it can attach.

### CONCLUSION

**{30}** For the aforementioned reasons, we affirm.

**{31}  IT IS SO ORDERED.**

**M. MONICA ZAMORA, Chief Judge**

**I CONCUR:**

**KRISTINA BOGARDUS, Judge**

**MEDINA, J., specially concurring.**

**{32}**  I concur in the result affirming the district court's rejection of Plaintiffs' duty to inform jury instruction on the grounds that duty to inform was not tried by implicit consent. I also agree that the district court properly granted Defendant's summary judgment motion on Plaintiffs' loss of consortium claim. Finally, I concur in the majority's conclusion that Plaintiffs failed to preserve a claim of judicial estoppel and that Dr. Macias's testimony that Dr. Roy was "very, very pleased and relieved" when she withheld antibiotics until after a lumbar puncture was performed, during her residency, was improper hearsay. However, I disagree with the majority's decision to assume without deciding that Dr. Macias's testimony that Dr. Roy "would have scolded [her]" was improper, presumably on the grounds that it constituted impermissible hearsay regarding the proper standard of care. Despite the majority's ultimate conclusion that the presumed improper statement was harmless, in my view this statement was not hearsay or otherwise improper.

**{33}**  We review the admission of evidence for an abuse of discretion. *Tartaglia*, 2000-NMCA-080, ¶ 27. "Admission or exclusion of evidence is a matter within the discretion of the [district] court and the court's determination will not be disturbed on appeal in the absence of a clear abuse of that discretion." *Coates*, 1999-NMSC-013, ¶ 36 (internal quotation marks and citation omitted). "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *Id.* (internal quotation marks and citation omitted). "[A]n abuse of discretion will be found only if we can characterize the district court's ruling as clearly untenable or not justified by reason." *Kilgore*, 2009-NMCA-078, ¶ 39 (internal quotation marks and citation omitted). "We do not find an abuse of discretion unless the court's ruling exceeds the bounds of all reason or is arbitrary, fanciful or unreasonable." *Id.* (internal quotation marks and citation omitted). "If evidence is erroneously admitted or excluded, the complaining party must show prejudice to obtain a reversal." *Id.*

**{34}**  "Hearsay" is a "statement that (1) the declarant does not make while testifying at the current trial or hearing, and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Rule 11-801(C); *see State v. McClaugherty*, 2003-NMSC-006, ¶ 17, 133 N.M. 459, 64 P.3d 486 ("A hearsay statement consists of an out-of-court statement offered to prove the truth of the matter asserted."), *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110. "The purpose of the rule is to protect against the danger that a *statement* of a declarant is unreliable

because it is not given under oath by a witness who is present at trial and subject to cross-examination." *McClaugherty*, 2003-NMSC-006, ¶ 17 (emphasis added).

**{35}** Plaintiffs called Dr. Macias to testify in their case in chief. Despite protestation to the contrary, Plaintiffs elicited numerous statements from Dr. Macias regarding her professional training, including whether she was trained to diagnose and treat meningitis during her residency in the Philippines and later during her residency in the United States. Plaintiffs also asked Dr. Macias to agree that she could have given Sergio two types of antibiotics, Rocephin and Vancomycin, when she heard from the Radiologist, to which she responded: "I could have. But that's not how my training—how I was trained to do—or trained to progress."

**{36}** On cross-examination, Dr. Macias explained that she was trained to obtain a spinal fluid sample before administering antibiotics to a meningitis patient and that administering antibiotics prior to obtaining a spinal fluid sample might interfere with the results and diagnosis because the antibiotics could clear out some of the organisms that were growing in the fluid. Dr. Macias also testified that she believed Sergio would be transferred to UNMH in a very reasonable time and believed UNMH would perform a lumbar puncture and then administer antibiotics to Sergio.

**{37}** Dr. Macias testified that she received her training to obtain a sample before administering antibiotics in both the Philippines and in Chicago during her residency programs. Plaintiffs did not object to this testimony. Dr. Macias testified that Dr. Roy, the chief of pediatrics during her residency program, would admonish residents if they had given antibiotics to a meningitis patient prior to conducting a lumbar puncture. Plaintiffs objected on hearsay grounds. The district court sustained the objection. Plaintiffs did not move to strike the testimony and instead asked to approach the bench and the following colloquy took place:

> [Defense counsel]: What she was trained is not offered for the truth of the matter asserted. It's offered to show the jury what she was trained no different than if she had studied in a textbook or had had been advised in a classroom setting. But this is how she was taught. And there is no way to get that in other than what her teacher taught her.

> [Plaintiffs' counsel]: There is no way to get it in because its hearsay. I mean, not being cute aside. But if it was in a textbook, of course then it's an exception under the hearsay rule. But this is being offered to show the jury this is how she was told to do it and that's the right way to do it. And we can't examine that person of course.

> [Defense counsel]: I mean, if he were commenting on what she did in this particular case, that would be a problem. But the question is, "How were you trained? What were you told?"

> [District Court]: Okay.

[Defense counsel]:  It's not offered for the truth. If he's right or if he's wrong is not the question. The question is what were you trained?

**{38}** The district court allowed the statement into evidence and instructed the jury as follows:

Ladies and gentlemen, I'm going to allow the answer to come in for the limited purpose of identifying how the doctor was trained not for the truth of the matter asserted and not for the standard of care but simply as a statement of how she was trained.

**{39}** Based on the foregoing, I do not conclude or presume that Dr. Macias's testimony that Dr. Roy would admonish residents if they had given antibiotics to a meningitis patient prior to conducting a lumbar puncture was an out-of-court statement offered for the truth of the matter asserted or that the testimony was offered as evidence regarding the standard of care for cases of suspected meningitis. Rather, Dr. Macias's testimony was offered to inform the jury how Dr. Macias was trained to diagnose and treat meningitis. Therefore, Dr. Macias's testimony was not hearsay. *See* Rule 11-801(C).

**{40}** Moreover, Plaintiffs raised the subject of Dr. Macias's training in the diagnosis and treatment of meningitis during direct examination. In so doing, Plaintiffs opened the door to cross-examination on the matter. *See Jaramillo v. Fisher Controls Co.*, 1985-NMCA-008, ¶ 50, 102 N.M. 614, 698 P.2d 887 (stating that "[c]ross-examination extends to matters that may modify, supplement, contradict, rebut[,] or make clearer the facts testified to in chief by the witness on direct examination"). Therefore, Defendants were within their rights to examine Dr. Macias on the same subject during cross-examination. *See id.*; *see also* Rule 11-611(B) NMRA ("Cross-examination should not go beyond the subject matter of the direct examination[.]"). "The scope and extent of cross-examination is a matter within the discretion of the [district] court." *Empire W. Cos., Inc. v. Albuquerque Testing Labs., Inc.*, 1990-NMSC-096, ¶ 7, 110 N.M. 790, 800 P.2d 725. "The right to cross-examine is valuable and may not be restricted so as . . . to preclude elucidation of the testimony." *Id.* ¶ 8.

**JACQUELINE R. MEDINA, Judge**